**2016-2056**

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

_____

AAT BIOQUEST, INC.,

*Plaintiff - Appellee,*

*v.*

TEXAS FLUORESCENCE LABORATORIES, INC.,

*Defendant - Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
CASE NO. 4:14-CV-03909-DMR
DONNA M. RYU, MAGISTRATE JUDGE

**CORRECTED BRIEF OF APPELLEE AAT BIOQUEST, INC.**

DEBORAH E. FISHMAN
KRISTA M. CARTER
**KAYE SCHOLER LLP**
3000 El Camino Real
Building 2, Suite 400
Palo Alto, CA 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700

*Attorneys for Appellee*
*AAT BIOQUEST, INC.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee AAT Bioquest, Inc. certify as to the following:

1. The full name of every party represented by me is:

   AAT Bioquest, Inc.

2. The name of the real party in interest represented by me is:

   AAT Bioquest, Inc.

3. All parent corporations and any publicly held companies that own

   10% of the stock of the party represented by me are:

   None

4. The names of all law firms and attorneys that have appeared for

   Appellee AAT Bioquest Inc. before the trial court or are expected to

   appear to before this Court are:

   Deborah E. Fishman (Kaye Scholer LLP, formerly of Dickstein

   Shapiro LLP)

   Krista M. Carter (Kaye Scholer LLP, formerly of Dickstein Shapiro

   LLP)

   Glenn J. Foulds (Bozicevic, Field & Francis LLP)

i

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ............................................................1

STATEMENT OF THE CASE ..............................................................2

    A.    District Court Proceedings ................................................2

    B.    On Appeal, TEFLABS Relies On Evidence And Arguments That Were Not Properly Before The District Court ............................4

        1.    TEFLABS Presents A New Anticipation Case On Appeal ........5

        2.    TEFLABS Presents A New Inequitable Conduct Case On Appeal ....................................................7

        3.    TEFLABS Relies On New Documents, Including One Specifically Excluded From Evidence, In Support Of Its Lost Profits Arguments On Appeal ............................9

    C.    Dr. Diwu's Pioneering Invention .........................................9

    D.    The USPTO Determined Dr. Diwu's Invention Was Not Anticipated In Light Of The Tsien '673 Patent .................................11

        1.    The Tsien '673 Patent ................................................12

        2.    The Examiner's Allowance........................................14

    E.    TEFLABS' Infringement Of Dr. Diwu's '165 Patent.........................16

SUMMARY OF THE ARGUMENT ....................................................17

    A.    TEFLABS Failed To Prove Anticipation...........................................17

    B.    TEFLABS Failed To Prove Inequitable Conduct ..............................18

    C.    The District Court Did Not Err In Finding Willful Infringement .......18

    D.    The District Court Did Not Err In Awarding Lost Profits .................19

ARGUMENT .....................................................................................20

    A.    The Invention Of Claim 1 Is Not Anticipated....................................20

       1.       Standard Of Review And Legal Framework ............................20

       2.       TEFLABS Applies The Wrong Legal Standard On Appeal ....21

       3.       TEFLABS' Appeal Raises New Grounds Not Properly Before The District Court ........................................................23

       4.       TEFLABS Failed To Demonstrate By Clear And Convincing Evidence That The Invention Of Claim 1 Is Anticipated ..............................................................................26

B.     No Inequitable Conduct .......................................................41

       1.       Standard Of Review And Legal Framework ............................41

       2.       TEFLABS' Appeal Raises New Grounds Not Properly Before The District Court ........................................................42

       3.       TEFLABS Did Not And Cannot Show An Intent To Deceive .................................................................................43

       4.       TEFLABS' Allegations Regarding The Declarations Are Unsubstantiated And Do Not Demonstrate Deceptive Intent...44

       5.       TEFLABS' Other Allegations Regarding Statements Made During Prosecution Were Properly Rejected By The District Court ....................................................................46

C.     Willful Infringement.........................................................51

       1.       Standard Of Review And Legal Framework ............................51

       2.       TEFLABS Does Not Appeal The District Court's Findings On Subjective Intent, Nor Could It............................52

       3.       The District Court Correctly Held That TEFLABS' Violation Of The Permanent Injunction Alone Established Willful Infringement...............................................54

       4.       The District Court's Willfulness Ruling, Based On A Higher Standard Than Is Now Required, Should Be Affirmed  ..........................................................................55

D.     Lost Profits Were Properly Awarded.................................56

1.    Standard Of Review And Legal Framework ............................56

2.    TEFLABS' Appeal Raises New Grounds Not Properly
      Before The District Court .........................................................56

3.    At Trial, AAT Bioquest Established That It Is Entitled
      To Lost Profits .........................................................................57

MOTION TO STRIKE ..........................................................................63

CONCLUSION ......................................................................................64

CERTIFICATE OF SERVICE ...............................................................65

CERTIFICATE OF COMPLIANCE......................................................66

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  786 F.3d 983 (Fed. Cir. 2015) .......................................................... 58, 59, 61

*Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc.*,
  583 F.3d 766 (Fed. Cir. 2009). ............................................................... 41, 51

*ATD Corp. v. Lydall, Inc.*,
  159 F.3d 534 (Fed. Cir. 1998) ......................................................................42

*Atofina v. Great Lakes Chem. Corp.*,
  441 F.3d 991 (Fed. Cir. 2006) ............................................................... 21, 39

*Briese Lichttechnik Vertriebs GMBH v. Langton*,
  No. 09 Civ 9790(LTS)(MHD),
  2012 WL 3105083 (S.D.N.Y. July 31, 2012) ..............................................41

*Cargill, Inc. v. Canbra Foods, Ltd.*,
  476 F.3d 1359 (Fed. Cir. 2007) ............................................................ 42, 46

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................ 21, 38

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008) ...................................................................56

*Creative Compounds, LLC v. Starmark Labs.*,
  651 F.3d 1303 (Fed. Cir. 2011) .................................................. 6, 23, 38, 41

*Easley v. Cromartie*,
  532 U.S. 234 (2001) ......................................................................................56

*Eaton Corp. v. Appliance Valves Corp.*,
  790 F. 2d 874 (Fed. Cir. 1986) .............................................................. 20, 24

*Eli Lilly & Co. v. Barr Labs., Inc.*,
  251 F.3d 955 (Fed. Cir. 2001) ............................................................... 20, 38

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
   903 F.2d 805 (Fed. Cir. 1990) ....................................................24

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ..................................................44

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
   45 F.3d 1550 (Fed. Cir. 1995) ....................................................39

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
   149 F.3d 1382 (Fed. Cir.1998) ....................................................63

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)..................................................... 1, 51, 55

*In re Cygnus Telecomms. Tech., LLC*,
   536 F.3d 1343 (Fed. Cir. 2008) ......................................... 7, 8, 63

*In re Petering*,
   301 F.2d 676 (CCPA 1962).............................................. 21, 23, 39

*In re Ruschig*,
   343 F.2d 965 (CCPA 1965).........................................................41

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed Cir. 2007) ....................................................55

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
   487 F.3d 897 (Fed. Cir. 2007). ...................................................42

*Micro Chem., Inc. v. Lextron, Inc.*,
   318 F. 3d 1119 (Fed. Cir. 2003) ........................................... 57, 58

*Monsanto Co. v. Scruggs*,
   459 F.3d 1328 (Fed. Cir. 2006) ..................................................63

*Net MoneyIN, Inc. v. Verisign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008) ........................................... 21, 29

*Optium Corp. v. Emcore Corp.*,
   603 F.3d 1313 (Fed. Cir. 2010) ..................................................42

*Polaroid Corp. v. Eastman Kodak Co.*,
    789 F.2d 1556 (Fed. Cir. 1986) ............................................................. 20, 24

*PSEG Nuclear, LLC v. United States*,
    No. 01-551C, 2005 WL 6112637 (Fed. Cl. Apr. 22, 2005) ......................... 26

*Rite-Hite Corp. v. Kelley Co. Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) ......................................................................... 57

*Sanofi-Synthelabo v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008) ....................................................... 21, 39, 41

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ..................................................... 23, 37

*Serrano v. Telular Corp.*,
    111 F.3d 1578 (Fed. Cir. 1997) ............................................................. 20, 26

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991) ..................................................... 58, 60

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008) ................................................................. 42

*Therasense, Inc. v. Becton Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ..................................................... 42, 45, 51

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
    374 F.3d 1151 (Fed. Cir. 2004) ................................................................. 37

## **Rules**

Federal Circuit Rule 28(b) ....................................................................... 2

N.D. Cal. Civil Local Rule 7-9(b) ........................................................... 22

## **STATEMENT OF THE ISSUES**

1.      Whether the District Court correctly found no anticipation based on the same prior art reference considered by the Patent Office during examination, and where TEFLABS bore the burden of proof but failed to address the relevant legal standard or provide evidence directed to the elements of anticipation.

2.      Whether the District Court abused its discretion in denying TEFLABS' belatedly-filed Motion for Reconsideration and excluding from evidence two previously-undisclosed documents.

3.      Whether the District Court erred in finding no inequitable conduct where TEFLABS failed to prove any false or omitted statements were made to the Examiner, and where it did not cite any evidence of intent or materiality.

4.      Whether this Court should affirm the District Court's willfulness decision where TEFLABS' sole challenge is to the court's finding of objective recklessness, where TEFLABS doesn't challenge the court's finding of subjective knowledge, and where the court's willfulness determination was made using a higher burden and standard of proof than required by *Halo*.

5.      Whether the District Court clearly erred in finding that there were no acceptable noninfringing alternatives to Fluo-8 AM—the product claimed in Claim 1 of the asserted patent—where no other products had the same superior qualities as Fluo-8 AM.

# STATEMENT OF THE CASE[1]

## A.    District Court Proceedings

TEFLABS received notice of AAT Bioquest's pending patent (and its relevance to the later-accused product) on January 18, 2011, and then of the issued U.S. Patent No. 8,799,165 ("the '165 Patent") on August 28, 2014.[2]  When TELABS refused to cease infringement, AAT Bioquest filed the present lawsuit.

At TEFLABS' request, the District Court conducted early summary judgment proceedings on issues of validity and unenforceability.[3]  Significantly, TEFLABS declined to take any discovery—not even from the inventors of the asserted '165 Patent or of AAT Bioquest's expert, Dr. Wayne Patton—to try to substantiate its claims.[4]  TEFLABS also failed to submit any expert testimony, or testimony from the perspective of a person of ordinary skill in the art, in support of its invalidity arguments.  Also notably, TEFLABS opted not to submit two

---

[1] Because TEFLABS' Statement of the Case and Statement of the Facts is incomplete, misleading, includes documents not before the District Court, and, at times, factually incorrect, AAT Bioquest includes a Statement the Case pursuant to Federal Circuit Rule 28(b).

[2] Appx13-14 (Findings of Fact ("FOF") 15, 20); Appx2714 (Undisputed Facts ("UF") 23-24).

[3] Appx16 (¶28); Appx241.

[4] Appx261-262.

references to the District Court during summary judgment proceedings that it now improperly cites on appeal in support of its anticipation argument.[5]

On April 13, 2015, the District Court denied TEFLABS' summary judgment motions and granted AAT Bioquest's cross-motions of no invalidity based on anticipation, obviousness, lack of written description, and non-enablement, and of no inequitable conduct.[6]  The District Court's determination was based, in part, on TEFLABS' failure to present evidence:

> [O]n summary judgment, TEFLABS repeatedly failed to present evidence related to the basic legal standards for its defenses…. Instead, TEFLABS' summary judgment submission relied heavily on attorney argument rather than record evidence or case law.  As noted by this court, TEFLABS' briefs included "virtually no citations to legal authority, and only minimal citations to undifferentiated masses of [hundreds of pages] of [patent files]."[7]

In fact, "TEFLABS' failure to offer evidence or persuasive case law in support of its defenses rendered them meritless as presented."[8]

Following a bench trial on issues of damages, willfulness, and exceptional case, the District Court held that (1) AAT Bioquest met its burden of proving that it was entitled to lost profits in the amount of $141,026.23, (2) AAT Bioquest met its burden of showing that TEFLABS willfully infringed the '165 Patent, (3)

---

[5] *See infra* n.11.

[6] Appx2543-2571.

[7] Appx28 (citations to MSJ findings omitted).

[8] Appx29.

enhanced damages (trebled damages of $423,078.69) were warranted, and (4) this is an exceptional case in two respects.[9] The exceptional case determination was based on the objectively unreasonable way TEFLABS presented its defenses ("failing to cite law in support of its arguments, and failing to raise evidence on the basic elements of its defenses") and on TEFLABS' continued infringing sales *even after* the District Court entered a permanent injunction.[10]

TEFLABS appeals the District Court's summary judgment rulings of no invalidity based on anticipation and no inequitable conduct, but is not appealing the rulings of no invalidity based on obviousness, non-enablement, and inadequate written description. *See* Texas Fluorescence Laboratories Inc.'s Appeal Brief (hereinafter, "TF Br.") 2. TEFLABS also appeals the District Court's rulings on willfulness and lost profits, but is not appealing the findings of fact and conclusions of law on enhanced damages and exceptional case. *Id.*

## B. On Appeal, TEFLABS Relies On Evidence And Arguments That Were Not Properly Before The District Court

Tacitly admitting that its case before the District Court was deficient, TEFLABS tries to augment its evidence by improperly presenting new documents, new citations to evidence, and new arguments to this Court on appeal.

---

[9] Appx22-26 (lost profits); Appx27-31 (willfulness); Appx32-34 (enhanced damages); Appx36-37 (exceptional case).

[10] Appx36-37.

1.    **TEFLABS Presents A New Anticipation Case On Appeal**

In support of its anticipation arguments, TEFLABS devotes several pages of its purported fact section to discuss U.S. Patent No. 4,603,209 (referred to as "Tsien '209") (TF Br. 9, 10-12; *see* also *id.* at 29-30, 33-34) and U.S. Patent No. 4,686,432 (referred to as "Tsien '432").  TF Br. 11; *see also id.* at 26.  Yet neither patent was before the District Court during summary judgment proceedings on validity and inequitable conduct, nor were they ever admitted into evidence.[11]

TEFLABS also provides great detail on what it alleges the Tsien 1980 BAPTA Paper discloses and teaches (TF Br. 9-10), but TEFLABS never once cited to a specific page of this publication in support of its arguments before the District Court.[12]  In fact, TEFLABS' entire summary judgment briefing on anticipation is ***devoid of even a single page citation*** to its exhibits, not even to the allegedly-invalidating prior art—U.S. Patent No. 5,409,673 (the "Tsien '673 patent").[13]

---

[11] When TEFLABS' first tried to submit these documents to the District Court in a Motion for Reconsideration, the District Court specifically excluded them from the record.  Appx3.

[12] Appx302 (vague reference to what Tsien allegedly reported in 1980, but without reference to the exhibit); Appx305 (same but in context of obviousness argument); Appx2130 (non-specific reference to exhibit); Appx2131 (same but in context of obviousness argument).

[13] Appx275; Appx291-304; Appx2129-2130.

Indeed, as this Court has stated, "[i]t is not the trial judge's burden to search through lengthy technologic documents for possible evidence."[14]

The only evidentiary support to which TEFLABS cited to the District Court in support of its anticipation argument with any particularity was three paragraphs of a declaration from Dr. Minta[15]—TEFLABS' founder, Chairman, and Chief Scientist—who was not offered as an expert. Yet, TEFLABS now wants this Court to consider evidence that it failed to cite to the District Court. For example, in support of its anticipation argument on appeal, TEFLABS cites to the entire Minta Declaration, and other previously-uncited paragraphs (TF Br. 14, 26, 28), as well as previously-uncited pages of the Tsien '673 patent (TF Br. 6, 8, 13-14), the prosecution history of the '165 Patent (TF Br. 6-9), and the Tsien '209 and Tsien '432 patents, which were specifically ***excluded from evidence***[16] (TF Br. 9, 10-12, 26, 29-30, 33-34).[17]

---

[14] *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011).

[15] Appx2130 (citing Appx2193-2194 (¶¶18, 21, 23)).

[16] Appx3.

[17] TEFLABS also improperly refers to another document that was not before the District Court—a USPTO Decision on Reexamination Request. TF Br. 30, 43. While this reference clearly should be stricken (*see infra* at 62 (Motion to Strike)), TEFLABS fails to explain how it would have been relevant to the anticipation decision or could have rectified its failure of proof. Nor could it. The Request included references not before the District Court and, in any event, a decision on

(continued...)

This Court should not consider this long list of belated and previously-uncited evidence when reviewing the District Court's summary judgment ruling of no anticipation.[18]

### 2.    TEFLABS Presents A New Inequitable Conduct Case On Appeal

The District Court entertained TEFLABS' inequitable conduct case on summary judgment and summarized it as follows: "TEFLABS makes conclusory, scattershot allegations of instances of inequitable conduct supported by a handful of impenetrable evidentiary citations."[19]  Indeed, as with anticipation, TEFLABS' entire briefing on inequitable conduct was ***devoid of even a single page citation*** to the record, not even to the prosecution history.[20]  The only citations were to entire

---

institution is not a validity determination and is based on far less than is required to meet the clear and convincing burden of proof here.

[18] *In re Cygnus Telecomms. Tech., LLC*, 536 F.3d 1343, 1352-53 (Fed. Cir. 2008) ("[U[nder the rule set forth by the Ninth Circuit in *Carmen*, in ruling on the . . . summary judgment motion we will not consider any part of the record that was not presented to or cited to the district judge in connection with that motion.") (citing *Carmen v. S.F. Unified School Dist.*, 237 F.3d 1026 (9th Cir. 2001)); *see infra* at 62 (Motion to Strike).

[19] Appx2568 and n.19 (highlighting TEFLABS' indiscriminate citations to 1,000 pages of patent files (as "12040753_FILE_HISTORY") in its opening motion for summary judgment, and limited citations to TEFLABS' supporting declaration as the sole evidentiary support in its reply brief).

[20] Appx276-277; Appx309-311; Appx2133-2135.

prosecution histories (including histories for patents not at issue here[21]) and two paragraphs of Dr. Minta's declaration.[22]

Additionally, TEFLABS' arguments before the District Court failed to even allege materiality or intent until its reply brief, in which it merely provided attorney argument that its contrived list of unsupported allegations were material and that "additional allegations" supported intent.[23]

In contrast, TEFLABS' new inequitable conduct case on appeal includes specific citations to the prosecution history, the '165 Patent, and additional paragraphs of Dr. Minta's declaration. It also tries to make the connection, for the first time, between its allegations of false statements and its assertions of materiality and intent. But this is too little, too late. The newly-cited evidence and reworked arguments were not before the District Court and should not be considered by this Court.[24]

---

[21] TEFLABS had asked the District Court to find unenforceable U.S. Patent No. 8,927,224 as well as pending U.S. Patent Application 13/374,967. Appx311. After AAT Bioquest informed TEFLABS that the District Court lacked jurisdiction to decide the enforceability of an unasserted patent or a pending patent application, TEFLABS dropped the argument.

[22] Appx311; Appx2133.

[23] Appx2134.

[24] *In re Cygnus*, 536 F.3d at 1352-53.

3.    **TEFLABS Relies On New Documents, Including One Specifically Excluded From Evidence, In Support Of Its Lost Profits Arguments On Appeal**

In challenging the District Court's award of lost profits, TEFLABS cites two documents that were not before the District Court. The first—Kao (2012) (TF Br. 51)—was not presented in the context of noninfringing alternatives[25] and shouldn't be considered for that purpose on appeal.

More egregiously, however, is TEFLABS' reliance on Simpson (2006) (TF Br. 51), which was ***specifically excluded from evidence*** at trial.[26] TEFLABS fails to acknowledge that the District Court made this evidentiary ruling, nor does it challenge that ruling. Instead, TEFLABS merely reargues the purported contents of Simpson (2006) to this Court. For these reasons, Kao (2012) and Simpson (2006) are not properly before this Court in its review of the District Court's finding of no acceptable noninfringing alternatives and award of lost profits.

C.    **Dr. Diwu's Pioneering Invention**

The patent-in-suit—the '165 Patent—is directed to a specific fluorescent calcium ion indicator. Calcium ion indicators are chemical compounds used in

---

[25] Appx3100-3103; Appx3121; Appx3102-3103.

[26] Appx2797-2799; Appx6 ("[E]ven if the exhibit were not precluded due to TEFLABS' failure to file a timely opposition brief [to AAT Bioquest's Motion in Limine], it would nevertheless be precluded because TEFLABS had been served with a contention interrogatory that directly requested the information on the indicator list, but failed to disclose the list in its response.").

intracellular assays to detect the presence and quantity of calcium ion in a cell, an important indication of cell signaling.[27]  Fluorescent ("fluo") calcium ion indicators are indicators where the reporter component used to dye and detect the calcium ion is based on fluorescein, which is a fluorescent molecule.[28]

Dr. Zhenjun Diwu, President and co-founder of AAT Bioquest, and his colleagues, Drs. He and Liao, successfully designed and developed an improved fluo indicator[29]—Fluo-8 AM[30]— and then filed a patent application on April 13, 2007.  Fluo-8 AM had significantly brighter fluorescence as compared to the other fluo indicators that existed at the time.[31]  This brighter fluorescence was due, in part, to the unexpected superior loading of the new compound into the cells (and retention in the cells), better water solubility, better transportation in the cells, and

---

[27] Appx2092 (¶¶18-19).  Calcium ion is an important signaling molecule involved in many physiological processes within cells and in many biological activities, making their detection in assays extremely useful for research, discovery, and diagnostic purposes.  *Id.*

[28] Appx2092 (¶21).

[29] Appx2082 (¶¶9-10).

[30] AAT Bioquest named its compound Fluo-8 AM® because it was approximately twice as bright as Fluo-4 AM, which was the best fluo indicator commercially available at the time of the invention.  Appx2082 (¶11).  The "AM" designation means that the indicator has the addition of acetoxylmethyl ("AM") esters.  Appx2092 (¶20).

[31] Appx2082 (¶10); Appx2104-2105 (¶¶51-53).

quicker activation once inside the cells.[32]  Even TEFLABS admits that Fluo-8 AM

was "the brightest Fluo Dye available" with "faster and easier loading," and

described it as "***an ideal indicator*** for HTS [high throughput screening] and other

calcium applications" because of its superior qualities.[33]

### D.    The USPTO Determined Dr. Diwu's Invention Was Not Anticipated In Light Of The Tsien '673 Patent

TEFLABS' recitation of purported facts relating to the prosecution history

focuses on irrelevant issues and omits several important facts regarding the Tsien

'673 patent.  For example, TEFLABS underscores statements and rejections made

by the Examiner during prosecution (TF Br. 7-9), which were necessarily

addressed or overcome when the Examiner allowed Claim 1 of the '165 Patent.

TEFLABS also focuses extensively on an irrelevant comparison of co-pending

claims 33 and 34 (TF Br. 4-9), where the appropriate anticipation inquiry is

whether the ***prior art*** discloses all of the elements of the claimed invention.

Here, the Examiner found that the Tsien '673 patent did not disclose all of

the elements and, thus, did not anticipate (or render obvious) the claimed invention.

---

[32] *Id.*

[33] Appx1826 ("The brightest Fluo Dye available!"); Appx1842; Appx1829; Appx1831(emphasis added); Appx2713 (UF 19).

### 1.    The Tsien '673 Patent

Dr. Diwu and his co-inventors disclosed the Tsien '673 patent as prior art in Information Disclosure Statements.[34]

The Tsien '673 patent issued in 1991 and is directed to developing different classes of indicator dyes for calcium.  While the Tsien '673 patent expressly discloses and provides the specific chemical structures for five calcium indicators—Rhod 1, Rhod 2, and Fluo-1 through Fluo-3 (*i.e.*, non AM) compounds—it includes claims to a genus of calcium indicators.[35]  Claim 1 was the broadest claim and literally encompassed a genus of more than a ***billion*** potential calcium indicator compounds.[36]  Of relevance here are the fluo indicators.[37]  Below is a depiction of the base structure for the disclosed fluo compounds with two of the eleven substituents (that are relevant here) indicated:[38]

---

[34] Appx602-605; Appx1027-1029.

[35] Appx2556.  Additionally, while Tsien notes that esters may be added to the compounds (Appx347 at 5:27-31 and Appx356-357 (Claims)), it provides no specific embodiments of molecules with esters, or any guidance as to where or when an ester, or how many esters, may be advantageous.  Appx2099 (¶37).

[36] Appx2100-2101 (¶¶40-41).

[37] *Id.*

[38] In the Tsien '673 Patent, the X position is referred to as Z and $Z^1$ and the K position is referred to as X.  Appx347-348 at cols. 6:54-7:12.

| Molecule | X | K |
|----------|---|-----|
| Fluo-2 | H | $CH_3$ |
| Fluo-3 | Cl | $CH_3$ |

Omitted from TEFLABS's brief is the fact that Tsien taught away from developing a fluo indicator like Fluo-2 with a <u>non</u>-electron withdrawing group at position X. The difference between Fluo-2 and Fluo-3 is that Fluo-2 has Hydrogen (H) at position X whereas Fluo-3 has Chlorine (Cl) at its position X. Hydrogen (H) is a "<u>non</u>-electron withdrawing group" whereas Chlorine (Cl) is an "electron withdrawing group."[39] Tsien expressly states that Fluo-3 is a preferable compound and that Fluo-2 is not a desirable compound because the <u>non</u>-electron withdrawing group at the X position made the indicator "too pH sensitive for general use."[40]

Based on the Tsien disclosure, it was accepted in the field that an electron withdrawing group ***was necessary*** at position X for a calcium indicator to be useful in intracellular assays.[41] Notably, Fluo-4 AM—the first improved fluo structure

---

[39] Appx2094 (¶23(h)); Appx2098-2099 (¶36).

[40] Appx355 at cols. 21:55-22:3.

[41] Appx2098-2099 (¶36).

after Fluo-3—has a Fluorine (F) at position X.  Fluorine (F) is an even stronger electron withdrawing group than the Chlorine (Cl) at position X on Fluo-3.[42]

## 2.    The Examiner's Allowance

The Applicants provided the Examiner with a structural comparison of the claimed Fluo-8 AM, as well as the prior art compounds, noting the structural differences between each.[43]  Notably, Fluo-8 AM has a <u>non</u>-electron withdrawing group at position X (despite Tsien's teaching), as well as five AM esters.[44]

Not until Dr. Diwu and his co-inventors developed Fluo-8 AM—***16 years after*** the Tsien disclosure—did there exist a commercially-available fluo indicator for intracellular assays with a <u>non</u>-electron withdrawing group at position X.[45]  It was not discovered that a fluo indicator would work in intracellular assays without an electron withdrawing group (which provides a lower corresponding pKa value)

---

[42] *Id.*

[43] Appx1487-1491.

[44] While Fluo-2 and Fluo-8 AM are structurally similar—with two notable and admitted differences (TF Br. 23)—it is not a simple substitution to arrive at the substituent difference (Hydrogen (H) at the K position) or to add the AM esters; one would have to know the desired structure at the outset to synthesize that specific structure.  Appx2097-2098 (¶¶30-32).

[45] No one (not even Dr. Minta) made the Fluo-8 AM structure, with Hydrogen (a <u>non</u>-electron withdrawing group) at the X position, before AAT Bioquest. Appx2102 (¶46); Appx2231 (¶18); Appx2083 (¶13); Appx2968-2969 (Minta Testimony).

at position X until Fluo-8 AM was developed.[46]  Even TEFLABS admits that this belief—that an electron withdrawing group was required for a workable fluo indicator—was a misconception existing at the time of the Tsien '673 patent: "[a]lthough *a lower pK$_a$ was assumed necessary* when the Fluo dyes were invented, experimental data has established that Fluo-2's pK$_a$ is not a limitation."[47]

As the basis for allowing of Claim 1 vis-à-vis anticipation, the Examiner distinguished Fluo-8 AM from the Tsien '673 patent and correctly stated that "*[t]his compound is not anticipated.*"[48]  The Examiner went on to explain that the Fluo-8 AM compound of Claim 1 is not rendered obvious by the prior art because Fluo-8 AM achieved "unexpected results" and because the Tsien teaching gave "little motivation to select this compound."[49]

Dr. Diwu and his co-inventors were awarded the '165 Patent on July 15, 2014 by the U.S. Patent and Trademark Office ("USPTO").[50]  The prosecution history of the '165 Patent (from 2007 to 2014) constitutes the back and forth negotiation between the inventors and the USPTO, with the resulting Claim 1 of the '165 Patent reflecting a well-vetted and supported patentable invention.

---

[46] Appx2083 (¶14); Appx2099 (¶37).

[47] Appx1862 (emphasis added).

[48] Appx1763 (emphasis added).

[49] Appx1763.

[50] Appx38.

### E.    TEFLABS' Infringement Of Dr. Diwu's '165 Patent

TEFLABS made the decision to make and sell the infringing product in response to customer requests for Fluo-8 AM.[51]  Unable to ascertain the structure of Fluo-8 AM on its own, TEFLABS surreptitiously obtained a sample of Fluo-8 AM through a third party.[52]  After evaluating the sample, TEFLABS began making and selling its copycat product as "Fluo-2 MA AM." [53]  TEFLABS had to prove to customers that its product was the same compound as AAT Bioquest's Fluo-8 AM, and later changed the name to Fluo-8 to avoid confusion.[54]  TEFLABS' copycat product became its best-selling calcium indicator.[55]

Even after the '165 Patent issued, TEFLABS continued to make and sell its Fluo-8 product, knowing that it was covered by Claim 1 of that patent.[56]  Even after the District Court entered a permanent injunction, and after certifying compliance with the injunction, TEFLABS continued to offer for sale and sell the infringing product in contempt of the District Court's order.[57]

---

[51] Appx2712 (UF 18); Appx2938 (Minta Testimony).

[52] Appx13 (FOF 11).

[53] Appx13 (FOF 11).

[54] Appx2938 (Minta Testimony).

[55] Appx2712 (UF 15).

[56] Appx18 (FOF 30-33).

[57] Appx2572-2574; Appx3715; Appx2945-2948 (Minta Testimony); Appx3017 (Yeager Testimony).

## SUMMARY OF THE ARGUMENT

### A.    TEFLABS Failed To Prove Anticipation

The two admitted differences between the Fluo-8 AM structure and the Fluo-2 structure disclosed in the Tsien '673 patent precluded a finding that the identical invention was disclosed and, thus, anticipated.

TEFLABS also failed to prove that the genus disclosed in Tsien anticipates the Fluo-8 AM species by describing not only a broad class but also a much more limited class such that one of ordinary skill in the art would "at once envisage each member of this limited class" that includes the Fluo-8 AM species.  While ignoring the legal standard, TEFLABS' assertion that there was "guidance to try" the Fluo-8 AM structure (because, it alleges, placing Hydrogen at the K position was well known to adjust affinity) was belied by record evidence and industry practice. Moreover, TEFLABS ignores that, based on Tsien's teaching, one of ordinary skill would not have envisioned a limited class that included fluo indicators with non-electron withdrawing groups at the X position, such as on Fluo-8 AM, because those were believed to be unworkable.

TEFLABS has also not demonstrated that the District Court abused its discretion in (1) denying its Motion for Reconsideration where TEFLABS failed to show diligence in seeking reconsideration nearly nine months after the District

Court's ruling, or (2) excluding from evidence the two belatedly-disclosed documents on which TEFLABS' new anticipation case on appeal relies.

## B.    TEFLABS Failed To Prove Inequitable Conduct

TEFLABS' scattershot and unsupported allegations failed to state a defense of inequitable conduct, much less prove such a defense by clear and convincing evidence.  Beyond its failure to cure basic pleadings deficiencies (such as identifying <u>who</u> it alleges committed inequitable conduct), TEFLABS has not presented clear and convincing evidence that there was a material misrepresentation or omission made to the Examiner with deceptive intent. TEFLABS' allegations of false statements, materiality, and intent were based on nothing more than attorney argument and directed rebutted by record evidence. Thus, the District Court properly granted summary judgment of no unenforceability based on inequitable conduct.

## C.    The District Court Did Not Err In Finding Willful Infringement

Under a higher standard and burden of proof than is now required, the District Court correctly found that TEFLABS willfully infringed the '165 Patent. The undisputed and unrebutted facts of TEFLABS' subjective knowledge of its infringement, and failure to take any steps to remedy its infringement, are more than sufficient to support the District Court's finding.  Indeed, TEFLABS' continued infringement in contempt of the court-ordered permanent injunction

alone established its willfulness.  TEFLABS' focus on whether its defenses were objectively reasonable misses the point and does not seriously challenge the evidence supporting the District Court's finding of willful infringement.

## D.     The District Court Did Not Err In Awarding Lost Profits

Based on extensive evidence—including admissions from TEFLABS—of Fluo-8 AM's superior qualities and characteristics as compared with all of the prior fluo indicators, the District Court correctly concluded that there were no acceptable non-infringing alternatives to Fluo-8 AM.  On appeal, TEFLABS challenges only this finding, which is reviewed for clear error.  TEFLABS' irrelevant arguments and weak evidence do not rebut the overwhelming record evidence of Fluo-8 AM's superior qualities, that customers sought out Fluo-8 AM because of those qualities, and that Fluo-8 AM expanded the market by enabling new assays that couldn't be performed by the prior fluo indicators.  Because TEFLABS fails to identify any clear error in the District Court finding of noninfringing alternatives, the award of lost profits should be affirmed.

## ARGUMENT

### A.    The Invention Of Claim 1 Is Not Anticipated

#### 1.    Standard Of Review And Legal Framework

The District Court's grant of summary judgment on anticipation is reviewed *de novo*,[58] and its ruling on TEFLABS' motion for reconsideration is reviewed for an abuse of discretion.[59]  As a court of appeal, the Federal Circuit's function is not to retry the case, but to review the judgment based on the record before the District Court.[60]

To prevail on appeal, TEFLABS must show that it presented, during summary judgment proceedings, clear and convincing evidence on each element of anticipation such that no reasonable jury could find no anticipation.[61]  On the other hand, if AAT Bioquest demonstrated that TEFLABS, who bore the burden of proof

---

[58] *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

[59] The Federal Circuit applies the applicable law of the regional circuit, here the 9th Circuit, and reviews rulings a motion for reconsideration for an abuse of discretion.  *Serrano v. Telular Corp.*, 111 F.3d 1578, 1584 (Fed. Cir. 1997).

[60] *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1558 (Fed. Cir. 1986) ("This court reviews judgments.  Because we do not retry the case, [the appellant] must to prevail convince us that the judgment cannot stand on the record created at trial."); *Eaton Corp. v. Appliance Valves Corp.*, 790 F. 2d 874, 877 (Fed. Cir. 1986) ("Eaton's briefs reflect a total misunderstanding of the appellee process . . . [and] reflect the notion that an appeal is a second chance to try the case.  That approach is both wrong and wasteful of judicial resources.").

[61] *Eli Lilly*, 251 F.3d at 962 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

at trial, failed to produce clear and convincing evidence on an essential element of anticipation upon which a reasonable jury could invalidate the patent, summary judgment of no anticipation must be affirmed.[62]

Thus, TEFLABS must show that it presented clear and convincing evidence to the District Court that "the ***identical invention*** was already known to others" such that the Tsien '673 patent disclosed "all of the limitations of [Claim 1 of the '165 Patent] arranged or combined in the same way as recited" in that claim,[63] or that the disclosure of the Tsien genus describes not only a broad class but also a "much more limited class within that broad class," such that a person who is skilled in the art would "at once envisage each member of this limited class" that includes the Fluo-8 AM species.[64]

### 2.    TEFLABS Applies The Wrong Legal Standard On Appeal

While never previously raising issues of statutory interpretation, TEFLABS frames the issue of anticipation as whether the District Court misinterpreted 35 U.S.C. §102 to "effectively limit the scope of genus claims to specific examples."

---

[62] *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[63] *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008) (emphasis added).

[64] *In re Petering*, 301 F.2d 676, 681 (CCPA 1962); *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1084 (Fed. Cir. 2008); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006).

TF Br. 20.[65]  Setting aside the fact that this is not what the District Court did,
TEFLABS never addresses the correct legal framework set forth above.

TEFLABS also fails to acknowledge that it carries the burden, by clear and
convincing evidence, to prove that the Tsien '673 patent anticipates Claim 1 of the
'165 Patent.  Instead, remarkably, TEFLABS tries to shift its burden of proof to
AAT Bioquest by arguing that "[i]n order to avoid anticipation by Tsien '673,
***Plaintiffs must demonstrate*** unexpected performance differences between C33 and
fluo-2." TF Br. 27 (emphasis added).  While not relevant to the anticipation
inquiry, Dr. Diwu did demonstrate unexpected results during prosecution, which is
why the Examiner determined that Claim 1 was also not obvious.[66]

Moreover, TEFLABS contends that it is above the law, by picking and
choosing what law it "believes" applies and disregarding the overwhelming law
and facts presented against it.  TF Br. 47-48.  However, because TEFLABS failed
to present evidence (or even argue) from the perspective of one of ordinary skill in

---

[65] TEFLABS also claims for the first time that there are issues of statutory
interpretation with the District Court's willfulness and lost profits determinations
(TF Br. at 21-22).  However, TEFLABS' disagreement with the District Court
rulings does not constitute a challenge to the court's interpretation of the
applicable statutes.

[66] Appx2103-2104 (¶¶48-51); Appx2233 (¶22); Appx1762-1763.

the art at the time of the invention, as required by well-established precedent,[67]

TEFLABS' anticipation defense fails.[68]  TEFLABS cannot cite to any authority to

support its argument that the legal standard requiring identification of the level of a

person of ordinary skill in the art, and an evaluation based on that hypothetical

person's perspective, does not or should not apply here.  TEFLABS' persistent

disregard for the proper legal framework dooms its arguments on appeal.

### 3.     TEFLABS' Appeal Raises New Grounds Not Properly Before The District Court

#### a.     TEFLABS' Newly-Cited Documents And New Arguments Taint Its Anticipation Case On Appeal

Ignoring its complete lack of evidentiary showing during summary

judgment, TEFLABS asserts its anticipation case anew, with additional documents

that were specifically excluded by the District Court and previously-uncited

portions of the record below.[69]  TEFLABS reliance on the evidence not properly

before this Court is so pervasive in TEFLABS' arguments that its entire

---

[67] *See, e.g.*, *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."); *see also In re Petering*, 301 F.2d at 681.

[68] *Creative Compounds*, 651 F.3d at 1313-14 (affirming summary judgment of no invalidity where accused infringer "failed to provide any testimony from one skilled in the art identifying each claim element and explaining how each claim element is disclosed in the prior art reference").

[69] *See supra* n.11.

anticipation case on appeal is tainted.  It is TEFLABS' burden to convince the

Court that it should prevail based on the record below.[70]  As a court of review, and

not of first impression, this Court should reject TEFLABS' attempt to retry the

case with a new record on appeal.[71]

### b.    The District Court Did Not Abuse Its Discretion In Denying TEFLABS' Motion For Reconsideration

Nearly nine months after the District Court denied TEFLABS' summary

judgment motion of anticipation and granted AAT Bioquest's cross-motion of no

anticipation, TEFLABS moved the District Court to reconsider its validity

determination based on an alleged "manifest error of fact" and, implicitly

acknowledging its failure of proof during summary judgment, offered Tsien '209

and Tsien '432 into evidence for the first time.[72]

The District Court applied N.D. Cal. Civil Local Rule 7-9(b), which requires

that TEFLABS demonstrate (1) reasonable diligence in seeking reconsideration

and (2) that the court failed to consider material facts or dispositive legal

---

[70] *Polaroid Corp.*, 789 F.2d at 1558.

[71] *Id.*; *Eaton Corp.*, 790 F. 2d at 877; *see also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811-12 (Fed. Cir. 1990) (finding appeal frivolous and sanctioning appellant where it "based its appeal on baseless arguments and an attempt to retry its case, employing baseless arguments and misstatements of the record").

[72] Appx3283.

arguments.[73]  Because TEFLABS failed to show diligence and, instead, simply

reargued facts and arguments previously considered, the court denied the motion.[74]

The District Court also refused to enter the previously-undisclosed Tsien '209 and

Tsien '432 patents into evidence because "[t]hese are not newly discovered

documents, and there is no basis for admitting them into the record at this time."[75]

On appeal, TEFLABS fails to identify how it satisfied the reasonable

diligence requirement nor does it identify how the District Court abused its

discretion in denying its motion.  TEFLABS simply re-argues that its new evidence

refutes statements made in Dr. Patton's declaration.  But as the District Court

recognized in denying TEFLABS' Motion for a New Trial (which was not

appealed), "TEFLABS did not challenge Dr. Patton's declarations as 'false' in its

briefing on summary judgment, nor did it assert the falsity of the Patton

declarations at trial in September 2015.  Indeed, TEFLABS never even took Dr.

Patton's deposition."[76]  TEFLABS now argues (without support) that Dr. Patton's

declaration was false and that he lacks specific expertise.  TF Br. 28, 30, 34.

---

[73] Appx3.

[74] *Id.*

[75] *Id.*

[76] Appx5.

Because TEFLABS cannot show that the District Court abused its discretion,

the denial of TEFLABS' Motion for Reconsideration should be affirmed.[77]

### 4.  TEFLABS Failed To Demonstrate By Clear And Convincing Evidence That The Invention Of Claim 1 Is Anticipated

#### a.  TEFLABS Admits That The Tsien '673 Patent Does Not Does Not Disclose The Identical Invention As Claim 1 Of The '165 Patent

TEFLABS concedes that there are two differences between the Fluo- 2

compound disclosed in the Tsien '673 patent and the Fluo-8 AM compound of

claim 1—the addition of acetoxylmethyl ("AM") esters to Fluo-8AM and the

Hydrogen (H) versus a methyl group ($CH_3$) at the K position.[78]  Because

TEFLABS failed to point out where in the Tsien '673 patent there was an alleged

disclosure of the Hydrogen (H) substitution or the five AM ester groups, the

District Court correctly concluded that "TEFLABS ha[d] not identified where the

Tsien '673 patent the two admitted differences identified above were disclosed."[79]

Consequently, the District Court held that TEFLABS failed to meet its burden of

---

[77] *Serrano*, 111 F.3d at 1584-85 (finding that the district court did not abuse its discretion in striking the defendant's motion for reconsideration where newly-cited documents could have been raised during summary judgment); *see also PSEG Nuclear, LLC v. United States*, No. 01-551C, 2005 WL 6112637, at *12 (Fed. Cl. Apr. 22, 2005) (unpublished) (denying motion for reconsideration where plaintiff tried to "rehash previously rejected arguments and re-litigate issues already carefully considered and decided by the court").

[78] *Id.*

[79] Appx2558.

showing that the Tsien Patent "expressly or inherently disclose[s] . . . all of the elements of a claimed invention arranged as in the claim."[80]

On appeal, TEFLABS still cannot identify where the two differences were purportedly disclosed. Instead, TEFLABS asserts (for the first time) that the Tsien '673 patent "arranged all of the elements <u>in its claims</u>."[81] But it cannot be disputed that the Tsien '673 patent claims (literally encompassing more than 20 billion species[82]) do not set forth the specific elements of the Fluo-8 AM structure <u>as arranged</u> in that compound:

   1.  A chemical compound having the general formula:



and the pharmaceutically acceptable nontox esters thereof wherein:

---

[80] Appx2558.

[81] TF Br. 23 (emphasis in original). TEFLABS also repeatedly relies on statements made by the Examiner during prosecution of the '165 Patent (TF Br. 23, 34) but ignores that any objections or concerns the Examiner had were necessarily overcome when he allowed Claim 1 to issue. Indeed, as the basis for the allowance of Claim 1 vis-à-vis anticipation, the Examiner specifically distinguished Fluo-8 AM from the Tsien prior art and correctly stated that "***This compound is not anticipated.***" Appx1762-1763 (emphasis added).

[82] Appx2100 (¶40).

$E^1$ and $E^2$ are independently $H_1$, $CH_3$, $C_2H_5$, $CH_2OH$, $COOH$, or $CH_2COOH$, or $E^1$ and $E^2$ together are $—(CH_2)_m—V—CH_2)_n—$ where m and n are independently 1 and 2 and V is selected from the group consisting of $—CH_2—$, $—O—$, $—NH—$, $—NMe—$, $—S—$, and $—S—S—$;

W is H, OH, or COOH;

X is H, Me, COOH, F, Cl, Br, I, or $NO_2$;

Y is $—O—$, $—NMe—$, $—S—$, $—CH_2—$, $—CMe_2—$, $—CF_2—$,

$$\overset{O}{\underset{\|}{—C—}}$$

or a direct sigma bond making a five-membered central ring;

$Z^1$, $Z^2$, $Z_3$, and $Z^4$ are independently H, F, Cl, Br, I, or Me, and $Q^1$, $Q^2$ equal $R^1R^2N$-,

$$R^1R^2\overset{\oplus}{N}=$$

Or HO-, O= or $R^1R^2N$-, O=, where $R^1R_2$ are independently selected from the group consisting of H, Me, and Et; or $Z^1$, $Q^1$, $Z^3$ together are

$$—(CH_2)_3—\overset{|}{N}—(CH_2)_3—$$

and $Z^1$, $Q^1$, $Z^4$ together are

$$—(CH_2)_3—\overset{\oplus}{\underset{\|}{N}}—(CH_2)_3—$$

3. The compound of claim 1 wherein said alpha-acyloxyalkyl esters are acetoxymethyl esters.[83]

Consequently, TEFLABS' new argument fails as a matter of law because

TEFLABS cannot provide clear and convincing evidence that the Tsien '673 patent

---

[83] Appx356 at cols. 23:9-24:15.

shows "all of the limitations of [Claim 1 of the '165 Patent] arranged or combined in the same way as recited" in that claim.[84]

**b.    TEFLABS Cannot Prove, By Clear And Convincing Evidence, That The Tsien Genus Anticipates The Fluo-8 AM Species**

Ignoring the relevant legal question of whether a person of ordinary skill would have envisioned a limited class that includes the Fluo-8 AM species based on the broad Tsien genus, TEFLABS repackages its obviousness arguments and contends that there was "guidance to try" the Fluo-8 AM structure.  TF Br. 26-28. These arguments were insufficient to stave off a summary judgment determination that Claim 1 of the '165 Patent was not obvious (which it did not appeal[85]), and are even less compelling in the context of anticipation.

**(1)    TEFLABS failed to provide any credible evidence of anticipation to the District Court or on appeal**

First, TEFLABS does not dispute that, given the number of possible combinations that are encompassed by Claim 1 of the Tsien '673 patent at each of these different positions, this claim literally encompasses a genus of more than a

---

[84] *Net MoneyIN*, 545 F.3d at 1369-70.

[85] This is likely because the record below on contradicts TEFLABS' anticipation argument that the Fluo-8 AM structure was obvious to try by modifying Tsien's Fluo-2 compound.  TEFLABS' conclusory attorney arguments, where it provided no evidence that Fluo-2 would have been a structure chosen for manipulation (in contrast to AAT Bioquest's affirmative evidence to the contrary), were insufficient to meet its burden on summary judgment. Appx2562-2563; *see also* Appx1763.

*billion* potential calcium indicator compounds.[86]  Instead, TEFLABS *asserts as fact*, without credible support, that the industry's "practice" in developing indicators after the Tsien patent fixed 7 of the 11 variable sites (E1, E2, Q1, Z3, Y, Z4, and Q1) in the Tsien genus, to infer that those variable positions should not be included in the calculation of the number of species encompassed in the broad disclosure.  TF Br. 26.  Based on this unsubstantiated argument, TEFLABS ignores that Tsien disclosed 11 variables and excludes an entire class of fluorescent indicators (i.e., the rhod indicators) from its calculation.

But TEFLABS' argument was proven false by record evidence.  TEFLABS itself marketed products as early as 1998 with changes to at least three of these variables.[87]  Indeed, all of the variable positions of the Tsien '673 patent have been pursued by many chemists.[88]  TEFLABS has not challenged this evidence.

Moreover, the District Court did not find the list of indicators or Dr. Minta's assertions on which TEFLABS relies as probative or persuasive:

> There is no suggestion that the 18 listed indicators were the only ones on the market, nor that the products available in 2006 were exemplary of all fluo

---

[86] Appx2100 (¶40).

[87] Appx2230-2231 (¶¶15-16) (citing Appx2247 (TEFLABS' Fluo-535 and Fluo-535FF had changes to positions Z, QQ2, and Z4)).

[88] Appx2230-2231 (¶¶15-16) (citing Appx2256-2260 (changes at positions Z1, Q1, Q2, W, Z3 and Z4); Appx2299-2353 (changes at positions Y, Z, Z1, Q1, Q2, Z3 and Z); Appx2364-2365 (changes at positions E1 and E2); Appx2377-2380 (changes at positions Z, Z1, Q1, Q2, Z3 and Z)).

indicators that had been on the market since the issuance of the Tsien patent. Thus, on its face, TEFLAB's cultivated list of selected products is insufficient to show that in practice, the genus claim of the Tsien patent encompassed a limited number of species.[89]

Notably, TEFLABS does not even argue from the relevant perspective of one of ordinary skill in the art or how its assertions, if true, would be probative of what that person would have understood from the Tsien disclosure. TEFLABS does not cite to a single case (nor is AAT Bioquest aware of any) that hindsight perspective of what was allegedly done in practice after the Tsien disclosure is probative to the anticipation inquiry or what a person of ordinary skill would have understood based on the Tsien disclosure. As AAT Bioquest's evidence shows, a person of ordinary skill in the art would ***not*** have envisioned the Fluo-8 AM species as part of a limited class of compounds in light of the Tsien genus.[90]

Second, TEFLABS' next obviousness-like argument is that a Hydrogen (H) at position K was known and taught to predictably decrease affinity. TF Br. 9, 26. This assertion is based primarily on TEFLABS' attorney characterization of the two Tsien patents (the Tsien '209 and Tsien '432 patents) not in evidence. But TEFLABS' technical assertions about what these documents purportedly show— without expert testimony, without evidence from the perspective of one of ordinary

---

[89] Appx2559.

[90] *See infra* Section A.4.C.

skill in the art, and without ***the documents even being in evidence***—are nothing more than unsupported attorney argument.

Even so, TEFLABS ignores that no one offered a fluo indicator with Hydrogen (H) at the K position before AAT Bioquest did in 2007.[91] TEFLABS' argument to the contrary was not based on probative evidence and included assertions regarding irrelevant non-fluo indicators.[92] And, as Dr. Patton explained, "nothing about these different and distinct indicators would have prompted one of ordinary skill in the art to look to them in order to solve the problems that existed with fluo calcium indicators at the time of the invention in 2007."[93]

TEFLABS disregards the important fact that the Tsien '673 patent taught away from developing a fluo indicator like Fluo-2 with a <u>non</u>-electron withdrawing group at position X. Tsien expressly states that Fluo-3 is a preferable compound and that Fluo-2 is not a desirable compound because of the element at the X position. Tsien discloses that Fluo-2 fluorescence is almost "completely quenched" under acidic conditions because of the presence of the <u>non</u>-electron withdrawing groups, concluding that Fluo-2 is "too pH sensitive for general use."[94]

---

[91] Appx2102 (¶46); Appx2231 (¶18); Appx2083 (¶13).

[92] Appx24, n.7 (it was not apparent that the listed products "were even in the same class of products as Fluo-8"); Appx2230-2232 (¶¶14,18-19).

[93] Appx2231-2232 (¶¶18-19).

[94] Appx355 at cols. 21-22.

Fluo-2's deficiencies were the "motivation for the synthesis of a compound like fluo-3, with chloro [i.e., electron withdrawing group] substituents to increase the acidity of the chromophore."[95]  Thus, a person of ordinary skill would not have been "motivated to try" to develop any fluo indicator with a <u>non</u>-electron withdrawing group at position X, let alone one with Hydrogen (H) at position K.

Moreover, TEFLABS' argument falsely assumes that one of ordinary skill would have created calcium indicators to achieve a desired binding affinity, and would have done so by focusing only on the K position.  TEFLABS' assertion is belied by the record evidence.  Unrebutted expert testimony explained that there is no single or uniform desired binding affinity.[96]  Thus, one would not have *a priori* set out to design an indicator with a particular binding affinity unless he/she had a particular experiment in mind.[97]  TEFLABS also fails to offer any support for the proposition that, even if one of ordinary skill wanted to change the binding affinity of a fluo indicator, he/she would have necessarily focused only on the K position in Tsien's Fluo-2 compound.  On the contrary, there are several, different positions

---

[95] *Id.* at 22.

[96] Appx2102 (¶47).  There is no one size of affinity that fits all assays, nor an affinity that is desired or better than other affinities.  Affinity depends on which type of cellular environment or compartment one wishes to examine.  In other words, affinity is a factor chosen based on an assay target just like a person choses a shoe size based on the size of his or her feet.  *Id.*

[97] *Id.*

on fluo indicators that one of ordinary skill would have understood could have been used to modify binding affinity were there motivation to do so.[98]  TEFLABS has not provided any evidence to refute these facts.

Third, TEFLABS further assumes that one would have been motivated to approximate the binding affinity of Fluo-3 AM and Fluo-4 AM.  TF Br. 36. TEFLABS ignores the obvious—if one of skill in the art wanted to approximate the binding affinity of Fluo-3 AM and Fluo-4 AM, the most obvious way is to use the *same* "methyl" group at the K position.  TEFLABS provides Table 5 that purports to show that by substituting a –H for a –$CH_3$ (methyl), one could have obtained a binding affinity closer to that of Fluo-3 AM and Fluo-4 AM.  TF Br. 37. While no source information is provided, it is clear that the data presented existed only *after* Dr. Diwu and his co-inventors developed Fluo-8 AM and filed the '165 Patent application.  This unsubstantiated hindsight speculation simply does not inform what a person of ordinary skill in the art would have understood from the Tsien disclosure vis-à-vis the Fluo-8 AM species.

Fourth, in arguing that there is just a "single substitution in an example compound" and that "the only relevant difference between fluo-2 and C33 [Fluo-8 AM] was k=methyl versus H" (TF Br. 24, 26), TEFLABS ignores that Fluo-8 AM

---

[98] Appx2102 (¶¶ 46-47).

includes AM esters in five specific locations, and Fluo-2 did not include any AM esters.  In light of the Tsien's teaching that electron withdrawing groups were necessary for useful calcium indicators, one of ordinary skill would have been deterred from developing a fluo compound with <u>non</u>-electron withdrawing groups at the X position and include AM esters for use as calcium ion indications.[99]

Finally, TEFLABS does not explain why, if there was so much guidance pointing to the Fluo-8 AM structure, no one (not even Dr. Minta) made the Fluo-8 AM structure, with Hydrogen (a <u>non</u>-electron withdrawing group) at the X position and before AAT Bioquest,[100] 16 years after the Tsien disclosure.  In fact, no company offered a fluo indicator with either (1) AM esters, where the indicator also had <u>non</u>-electron withdrawing groups at position X, or (2) Hydrogen (H) at the K position, let alone both modifications before AAT Bioquest did so in 2007.[101]

### (2)    TEFLABS' evidence did not raise a material issue of fact

TEFLABS argues that "the Court erred in rejecting TEFLABS' evidence of anticipation"—Simpson (2006), the Minta Declaration, and the Tsien 1980 BAPTA paper—that TEFLABS alleges show that "k=H, methyl, F, and $NO_2$ were

---

[99] Appx2098 (¶36).

[100] Appx2102 (¶46); Appx2231 (¶18); Appx2083 (¶13); Appx2968-120 (Minta Testimony).

[101] *Id*.

recommended and routinely used to adjust affinity." TF Br. 28. While the District Court did not exclude any of these documents, they nonetheless had significant evidentiary deficiencies and could not satisfy TEFLABS' burden of proof.

Simpson (2006). Simpson (2006) provides a list of compounds without disclosing their specific structures and without even stating whether the compounds were commercially available or their structures publicly known.[102] Simpson (2006) describes the listed indicators as belonging to numerous categories of indicators,[103] and the only indicators listed with K=H are non-fluo indicators.[104] Unrebutted expert testimony established that the structure of non-fluo indicators would not have informed a person of ordinary skill in the art in designing and developing an improved fluo indicator.[105] Dr. Minta then excerpts from the Simpson list and sets forth, without corroboration or evidence of public availability, the alleged structure of each indicator.[106] Consequently, Simpson (2006) is not sound evidence and, in any event, is irrelevant to what a person or

---

[102] Appx381-382.

[103] Appx380 at 4 and 5.

[104] Appx24, n.7 (it was not apparent that the listed products "were even in the same class of products as Fluo-8"); Appx2230-2232 (¶¶14, 18-19).

[105] Appx2231 (¶18).

[106] Appx2191-2192.

ordinary skill in the art reviewing the Tsien disclosure would have envisioned (if anything) vis-à-vis a limited class of fluo indictors.

The Minta Declaration.  TEFLABS' reliance on Dr. Minta's declaration for its K=H argument was equally flawed.  Notably, Dr. Minta was never offered, nor qualified, as an expert pursuant to Fed. R. Evid. 702-703, nor does Dr. Minta's testimony qualify as opinion testimony by a lay witness pursuant to Fed. R. Evid. 701 because it is based on his purported expertise.[107]  Dr. Minta's testimony was nonetheless not probative to the invalidity analysis because it failed to present evidence from the perspective of one of ordinary skill in the art.[108]  Moreover, without independent, corroborating evidence of the assertions in the Minta declaration, Dr. Minta's assertions are insufficient to carry TEFLABS' burden of proof by clear and convincing evidence.[109]  Where, as here, testimony relates to a prior invention and is from an interested party, "*it must be corroborated*."[110]

Even so, TEFLABS only cited to three paragraphs of this declaration for anticipation and does so to argue that Simpson (2006) supports its assertion that there were only 36 possible combinations of substituents that had been practiced

---

[107] Fed. R. Evid. 701.

[108] *Schumer*, 308 F.3d at 1315-16.

[109] *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004).

[110] *Schumer*, 308 F.3d at 1315-16 (emphasis added).

for the Tsien positions and that Hydrogen (H) at position K was known.[111]  But, as discussed above, Simpson (2006) was not probative evidence of the "fixed substituent" argument and assertions regarding K=H were demonstrably false.

Tsien BAPTA 1980.  TEFLABS never once cited to a specific page of this publication in support of its arguments before the District Court.[112]  As this Court has stated, "[i]t is not the trial judge's burden to search through lengthy technologic documents for possible evidence."[113]  And TEFLABS' assertions now are based on attorney argument, even though "[c]onclusory statements simply mentioning the alleged prior art patent, relying on the same prior art considered by the PTO, and alleging invalidity fail to raise a genuine issue of material fact."[114]

TEFLABS simply has not demonstrated that Hydrogen (H) at position K position was common place or that a person of ordinary skill in the art would have envisioned a fluo indicator with the particular structure of Fluo-8 AM, including Hydrogen (H) at position K, in view of the Tsien genus.  TEFLABS' assertions to the contrary are nothing more than attorney argument, which was not only fatal to its motion for summary judgment on anticipation, but also could not raise a triable

---

[111] Appx2130.

[112] Appx302, Appx305, Appx2130-2131.

[113] *Creative Compounds*, 651 F.3d at 1313; *see also Eli Lilly*, 251 F.3d at 962; *Celotex*, 477 U.S. at 322.

[114] *Creative Compounds*, 651 F.3d at 1313.

issue of fact sufficient to survive AAT Bioquest's cross-motion for summary judgment of no anticipation.[115]

### c.    The Evidence Demonstrates That The Tsien Genus Does Not Anticipate The Specific Fluo-8 AM Species

The evidence presented to the District Court, including expert testimony,[116] demonstrates that the genus disclosed in the Tsien '673 patent encompasses billions of compounds and did not disclose a "much more limited class within that broad class" such that a person who is skilled in the art would "at once envisage each member of this limited class" that includes the Fluo-8 AM species.[117]  To the contrary, the specific embodiments disclosed in Tsien include diverse classes of indicators with different physical and functional properties, with no guidance as to those with superior cell loading ability and brightness.[118]  For example, if Q1 and Q2 are selected to be -OH and =O, the resulting indicators falls within the class of fluorescein dyes.[119]  On the other hand, if Q1 and Q2 were selected to be R1R2N

---

[115] *See, e.g.*, *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient substance, other than attorney argument, to show that the issue requires trial.").

[116] Appx2098-2102 (¶¶33-47), Appx2230-2232 (¶¶15-19, 21-23).

[117] *In re Petering*, 301 F.2d at 681; *Sanofi-Synthelabo*, 550 F.3d at 1084; *Atofina*, 441 F.3d at 999.

[118] Appx2100-2111 (¶¶40-41).

[119] *Id.*

and =N, the indicators would be within the class of rhodamine dyes.[120]  These two types of dyes have well-characterized functional differences.[121]

At the same time, Tsien taught that the X position must be an electron withdrawing group (such as Chlorine (Cl)) in order to lower the pKa of the compound to be of general use.[122]  The claimed Fluo-8 AM compound has a non-electron withdrawing group (Hydrogen) at the X position and, thus, the specific Fluo-8 AM compound would not be "immediately envisaged" by one of ordinary skill in the art looking at the genus encompassed by the Tsien '673 patent.  Indeed, the opposite is true.  Since Tsien's disclosure of a vast genus does not identify the "specific preferences" of a fluo indicator such as the Fluo-8 AM species and, in fact, discourages the development of an indicator with a non-electron withdrawing group at positon X—as on the Fluo-8 AM structure—there can be no showing that Claim 1 of the '165 patent is anticipated by the Tsien '673 patent.

The evidence presented pointed to one conclusion—that one of ordinary skill would not be able to envision the millions of species encompassed within the vast Tsien genus, much less the particular Fluo-8 AM species—and that conclusion

---

[120] *Id.*

[121] *Id.*

[122] Appx355 at col. 22.

is consistent with this Court precedent.[123]  Based on AAT Bioquest's affirmative evidence, and TEFLABS' failure of proof, the District Court properly granted summary judgment of no anticipation and that judgment should be affirmed.[124]

## B.    No Inequitable Conduct

### 1.    Standard Of Review And Legal Framework

The grant of summary judgment of no inequitable conduct at summary judgment is reviewed *de novo*.[125]  On review, the evidence and all reasonable factual inferences are considered in light of the applicable law and the burdens and standards of proof.[126]  Thus, the summary judgment ruling of no inequitable conduct

---

[123] *In re Ruschig*, 343 F.2d 965, 973-75 (CCPA 1965) (rejecting argument that the compounds were specifically disclosed in the prior art where the elements in the disclosure were rearranged "to create, ex post facto, four undisclosed specific compounds out of a possible 259" possibilities); *Sanofi-Syntelabo v. Apotex*, 550 F.3d 1075, 1084, (affirming *Sanofi-Syntelabo v. Apotex, Inc.*, 492 F. Supp. 2d 353, 386 (S.D.N.Y. 2007)) (no anticipation where disclosure of a genus (covering millions of possible compounds) would not have led a person of ordinary skill in the art to recognize a more limited sub-genus that would include the later-claimed compound).

[124] *Creative Compounds*, 651 F.3d at 1313-14 (affirming summary judgment of no invalidity); *see also Briese Lichttechnik Vertriebs GMBH v. Langton*, No. 09 Civ 9790(LTS)(MHD), 2012 WL 3105083, at *4 (S.D.N.Y. July 31, 2012) (denying accused infringer's motion for summary judgment of anticipation, and granting patentee's cross-motion).

[125] *Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc.*, 583 F.3d 766, 770 (Fed. Cir. 2009).

[126] *Id.*

should be affirmed if TEFLABS failed to present clear and convincing evidence to establish the existence of an essential element of the affirmative defense.[127]

On the other hand, to prevail on appeal, TEFLABS must show that it presented clear and convincing evidence to the District Court that one of the inventors, with intent to mislead or deceive the examiner, made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted materially false information to the PTO during prosecution.[128]  Both the materiality and intent elements are fact-driven[129] and it is TEFLABS that bore the burden of proving these elements by clear and convincing evidence.[130]

### 2.    TEFLABS' Appeal Raises New Grounds Not Properly Before The District Court

TEFLABS asked for early summary judgment, yet chose to forego all fact and expert discovery.  After presenting its case on summary judgment, the District Court summarized it as follows: "TEFLABS makes conclusory, scattershot

---

[127] *Id.* at 777; *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998)*; Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319-20 (Fed. Cir. 2010).

[128] *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007); *Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  Because of the severe penalty for finding inequitable conduct, courts are to "strictly enforce the burden of proof and elevated standard of proof."  *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1365 (Fed. Cir. 2008).

[129] *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 902 (Fed. Cir. 2007).

[130] *Star Scientific,* 537 F.3d at 1365.

allegations of instances of inequitable conduct supported by a handful of impenetrable evidentiary citations."[131]  The District Court thus found that "[t]hese unsupported attorney arguments are insufficient to meet TEFLABS's burden."[132]

TEFLABS tries to breathe new life into its allegations on appeal by including references to previously-uncited pages of the prosecution history, the '165 Patent, and Dr. Minta's declaration.  Indeed, *all of the specific citations to the record are new* on appeal.[133]  TEFLABS also argues, for the first time, that the allegedly false statements or omissions were both material and made with deceptive intent.  TF Br. 31 (Heading II.).  As with anticipation, TEFLABS' new citations and arguments are so ubiquitous that its entire inequitable conduct case is tainted.  Since TEFLABS' re-invented argument was not before the District Court, it should not be considered by this Court.

### 3.    TEFLABS Did Not And Cannot Show An Intent To Deceive

During summary judgment proceedings, the District Court found TEFLABS' allegations that accuse "AAT Bioquest" or "Plaintiff" of inequitable

---

[131] Appx2568, n.19.

[132] Appx2568 (citing *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006) ("A genuine issue of material fact [regarding inequitable conduct] is not raised by submission of merely conclusory statements or completely insupportable, specious, or conflicting explanations or excuses.")).

[133] Appx2133.  During summary judgment, TEFLABS cited to ¶¶10 and 52 of the Minta Declaration, but TEFLABS does not rely on these paragraphs on appeal.

conduct to be insufficient "because they fail to demonstrate the specifics of inequitable conduct."[134]  This same flaw is fatal to TEFLABS' inequitable conduct case on appeal.  TEFLABS has not and cannot accuse a specific person, as required, because it declined to take any discovery, not even one deposition. Consequently, TEFLABS cannot even allege, let alone provide clear and convincing evidence, that someone made a material misrepresentation or omission to the Patent Office and did so with an intent to deceive.[135]

### 4.    TEFLABS' Allegations Regarding The Declarations Are Unsubstantiated And Do Not Demonstrate Deceptive Intent

TEFLABS never challenges the results of the assays submitted in Dr. Diwu's declarations.  Instead, citing to its own brief,[136] TEFLABS argues that those results were not "unpredictable" and Dr. Diwu's failure to disclose that the results were expected amounts to an intent to deceive.  TF Br. 41-42.  But TEFLABS fails to rebut Dr. Diwu's testimony that the results were reported to the

---

[134] Appx2568 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) ("[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material representation or omission committed before the PTO.")).

[135] *Exergen Corp.*, 575 F.3d at 1328.

[136] TEFLABS' improper citations should be stricken.  *See infra* at 62 (Motion to Strike).

Patent Office accurately and without deceptive intent,[137] which dooms TEFLABS'
claim of inequitable conduct.[138]

Even so, TEFLABS assertions are demonstrably false.

TEFLABS' argues that the enhanced brightness of Fluo-8 AM (referred to as
Fluo-2) was expected given that the 488 wavelength is near the spectral maxima of
Fluo-8 AM.  TF Br. 41.  But, as Dr. Patton's unrebutted testimony explained, the
use of 488 nm laser would not explain the approximately 200% increase in the
brightness of Fluo-8 AM as compared to Fluo-3 AM and Fluo-4 AM.[139]

TEFLABS also references Kao (2012) (without citation except to its own
brief) for the notion that Fluo-8 AM's improved loading was expected because the
lack of chlorine substituents would have lowered the molecular weight and
increased the hydrophobicity of Fluo-8 as compared to Fluo-3.  TF Br. 42.  While
Kao was published *five years after* the priority date, and thus cannot inform what
would have been expected as of that date, it does not support TEFLABS'
argument.  Kao (2012) instead teaches that molecular weight does not necessarily
correlate to better accumulation and that the contribution of any given substituent

[137] Appx2086 (¶¶22-24).

[138] *Therasense*, 649 F.3d at 1290-91.

[139] Appx2103-2104 (¶¶49-51).

to overall hydrophobicity is unpredictable[140] and concludes by noting that even structurally similar fluo indicators may have significant differences in cell loading.[141] Thus, Kao only bolsters Dr. Diwu's evidence of unexpected results.[142]

### 5. TEFLABS' Other Allegations Regarding Statements Made During Prosecution Were Properly Rejected By The District Court

Beyond TEFLABS' basic evidentiary failures, the District Court evaluated each of TEFLABS' allegations discussed below and determined that TEFLABS did not prove inequitable conduct.[143]  In sharp contrast to TEFLABS' failure of proof, AAT Bioquest presented evidence that the challenged statements made during prosecution were (and remain) factually accurate and, therefore, could not have been made with deceptive intent.  TEFLABS' allegations of inequitable conduct during prosecution are addressed in turn.[144]

---

[140] Appx1813-1814 ("Interestingly, there was no significant difference in intracellular accumulation between fluo-3 and fluo-4, even though the MW (molecular weight) difference between the two is comparable to the difference between fluo-4 and fluo-2MA.").

[141] *Id*. at 170 ("We conclude that the structurally-similar fluo variants differ with respect to cellular loading, subcellular compartmentalization, and intracellular Ca2+ affinity.").

[142] Moreover, TEFLABS' loading argument relies on sheer speculation and an overly-simplistic view of membrane permeability.  Appx2103 (¶50).

[143] Appx2568-2570.

[144] TEFLABS' "inequitable conduct" allegations regarding the trial court proceedings (Section II. B. and E.) are unsupported and nonetheless cannot amount to inequitable conduct before the USPTO.  *Cargill, Inc. v. Canbra Foods, Ltd.*, 476

(continued...)

*First*, TEFLABS argued to the District Court that "the omission in the specification, and in all the prosecution history, of the established and preferred role of position 'k' to modify affinity" constituted inequitable conduct.[145]  The District Court was not persuaded because "TEFLABS cite[d] no evidence in support of these allegations, and does not even provide attorney argument about why these supposed misrepresentations are material or made with the intent to deceive the patent examiner."[146]  TEFLABS repeats its argument here, citing its own attorney argument (incorrectly credited to Minta) in its prior briefing for the proposition that "k=H was desirable to more closely match the affinity of Fluo-3 and Fluo-4."  TF Br. 32-33 (citing Appx301-302).  As discussed above, TEFLABS has not established that there was such a common practice, or that Hydrogen (H) at the K position was ever considered desirable until after Fluo-8 AM was invented.

*Second*, TEFLABS alleges that the '165 Patent "has very limited discussion of affinity of Kd" and failed to provide guidance for selecting j, m, or n

---

F.3d 1359, 1363 (Fed. Cir. 2007) ("A patent may only be rendered unenforceable for inequitable conduct if an applicant, ***with intent to mislead or deceive the examiner***, made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted materially false information to the ***PTO during prosecution***." (emphasis added)).

[145] Appx2134.

[146] Appx2570.

substituents or selecting the position k to modify affinity.[147]  TF Br. 32.  While it is not clear how this pseudo non-enablement argument is relevant to the inequitable conduct inquiry (or the anticipation inquiry), TEFLABS' argument was directly rebutted by expert testimony and the '165 Patent itself.[148]

*Third*, TEFLABS contends that the affinity relationship between C34 (Fluo-8 AM) and C33 (Fluo-2) was somehow concealed.  TF Br. 35.  But the District Court correctly found that this, and the allegation of deceptive naming, were directly contradicted by the patent file history,[149] which showed that the applicants provided the Examiner with a detailed structural comparison of the claimed Fluo-8 AM and Fluo-2 AM, as well as the prior art Fluo-2 compound, noting the structural differences between each.[150]

---

[147] TEFLABS raised this argument during summary judgment proceedings in the context of enablement attack, but it was rebutted by AAT Bioquest and then abandoned by TEFLABS before oral argument.  Appx2554-2555.  Summary judgment of no invalidity based on enablement was therefore properly entered against TEFLABS. Appx2555.

[148] Appx2097 (¶29) (citing Appx73-80 at cols. 41-56 (compounds 288, 290, 294, 296, 354, 355, 356 and 360).

[149] Appx2570 (citing Appx1487-1491 (Diwu affidavit)); *see also* Appx2105-2106 (¶57).

[150] Appx923; *see also* Appx1487-1491.

*Fourth*, TEFLABS argues again here that the Examiner's failure to object to the introduction of claim 33 was based on "Plaintiff's" failure to follow procedure and the Examiner's reliance on a typographical error in structure 284G of the published application.  TF Br. 37.  Notably, this was another allegation for which the District Court found that TEFLABS cited no evidence as to why, if true, it was material or made with deceptive intent.[151]  This is because TEFLABS' accusations are conjecture and unsupported by the file history.

While there was a typographical error in the published application, Applicants never relied on the published application.  Instead, they directed the Examiner to the 284G structure in the originally filed application, which contained no typographical error: "Claim 33 specifies a compound, support for which is found in Claim 23 and throughout the specification, see, e.g., 284G, *example 14, page 83*,"[152] which reflects an accurate representation of compound 284G.  Moreover, the 284G structure is not the claimed compound nor was it ever represented to be a specific embodiment of the claimed compound.[153]  Applicants relied on 284G structure to show support for the –H for –Me substitution at the K

---

[151] Appx2567.

[152] Appx877 (emphasis added).  Notably, page 83 corresponds to the originally filed patent application; in contrast, the published application has no page 83 and Example 14 is on pages 41-42 of the Patent.  Appx91-92 at cols. 77:1-79:60.

[153] Appx2105 (¶¶54-55).

position of claim 33.[154]  The typographical error was unrelated to that substitution at position K or to the addition of AM esters to the compound[155] and, thus, unrelated to any argument material to the patentability of claim 33.

*Fifth*, TEFLABS also asserts that AAT Bioquest "deliberately hid the structure of C33" (i.e., Fluo-8 AM).  Op at 38.  Without support or explanation, and for the first time on appeal, TEFLABS argues that this alleged omission ***could have*** implicated a pre-AIA best mode rejection.  *Id.*  This is not clear and convincing evidence of inequitable conduct.

*Finally*, TEFLABS attributes to AAT Bioquest the Examiner's statement that "fluo-2 was 'described by Tsien as the poorest performer in the patent specification'" and then claims that the statement is incorrect.  TF Br. 42.  However, the Examiner's reasoning was directly based on the Tsien '673 patent itself,[156] which provided ample support.[157]

---

[154] Appx1543; Appx877.

[155] Appx2105 (¶ 55).

[156] Appx1763 (citing Appx355 at cols. 21:65-68 ("because protonation has such a powerful effect on the fluorescence and is spectrally indistinguishable from a drop in [Ca+], fluo-2 is too pH sensitive for general use")).

[157] *See* Appx350 at col. 12:34-37; Appx355 at col. 21:55-56 ("[F]luorescence of fluo-2 was almost completely quenched as the pH was titrated from pH 7.7 to 4.1 in the absence of $Ca^{2+}$").

Because TEFLABS' arguments are not colorable, much less supported by clear and convincing evidence,[158] AAT Bioquest was entitled to a summary judgment of no inequitable conduct,[159] and that ruling should be affirmed.[160]

## C.    Willful Infringement

### 1.    Standard Of Review And Legal Framework

In *Halo Electronics v. Pulse Electronics*, the Supreme Court instructed that a willfulness determination is reviewed for abuse of discretion.[161]  The Court also rejected the notion that willfulness requires a finding of objective recklessness; rather, "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."[162]  It was AAT Bioquest's burden to show by a mere preponderance of the evidence that enhanced damages were warranted.[163]

---

[158] The "[n]umerous other deceptive acts" that TEFLABS alleges without specificity and with improper citation to its summary judgment briefing (TF Br. 42) (*see infra* at 62 (Motion to Strike)) likewise fails to meet TEFLABS' burden of proving inequitable conduct by clear and convincing evidence.

[159] *Therasense*, 649 F.3d at 1290-91.

[160] *Astrazeneca*, 583 F.3d at 777 (affirming summary judgment of no inequitable conduct).

[161] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016).

[162] *Id.* at 1932.

[163] *Id.* at 1934.

### 2.    TEFLABS Does Not Appeal The District Court's Findings On Subjective Intent, Nor Could It

On appeal, TEFLABS challenges only the District Court's finding of objective recklessness, but does not contest the finding of subjective knowledge. TF Br. 2, 43.  This is not surprising given the compelling evidence of TEFLABS' subjective knowledge and intent to infringe:

- TEFLABS knew of AAT Bioquest's pending patent application as early as 2009 or 2010 and understood that its product would be covered by AAT Bioquest's patent once it issued;[164]

- TEFLABS secretly obtained a sample of AAT Bioquest's Fluo-8 AM product, determined its structure, and starting making and selling the same compound in response to customer requests for Fluo-8 AM;[165]

- After the '165 Patent issued, "TEFLABS understood that its accused Fluo-8 product was covered by a claim of the issued '165 Patent.  Nonetheless, TEFLABS did not cease its manufacture and sale of its Fluo-8 product, nor did it attempt to design around the invention claimed in the patent;"[166]

---

[164] Appx2714 (UF 21); Appx13 (FOF 14).

[165] Appx2712 (UF 18); Appx2938 (Minta Testimony); Appx13 (FOF 11).

[166] Appx3001, Appx3002 (Yeager Testimony); Appx2716 (UF 33, 35); Appx13-14 (FOF 14, 18, 20).

- Instead of taking remedial action to address its infringement, TEFLABS took deliberate steps to woo AAT Bioquest's customers;[167]

- TEFLABS continued to sell the infringing product because it wanted to revenue and wanted to make itself more attractive to one of AAT Bioquest's customers, Molecular Devices, as a potential acquisition;[168]

- Even after the District Court entered a permanent injunction, TEFLABS continued to make sales of its infringing product, and even after Dr. Minta certified compliance with the injunction to the District Court, TEFLABS continued to make additional sales of its infringing product.[169]

Based on TEFLABS' admission that it knew its sales were infringing at and after the '165 Patent issued, and its continued sales of the infringing product after the permanent injunction, the District Court correctly concluded that "***AAT has easily met the second prong [i.e., subjective prong] of the Seagate test***."[170] TEFLABS has not challenged these findings of fact or the District Court's conclusion that TEFLABS acted with the requisite subjective knowledge.

---

[167] Appx3013, Appx3057 (Yeager Testimony); Appx13 (FOF 13); Appx33.

[168] Appx3012-3013 (Yeager Testimony); Appx33.

[169] *See supra* n.57; Appx18 (FOF 30-33).  The District Court concluded that TEFLABS' post-injunction sales of the infringing product amounted to "flippant conduct and lack of accountability exhibit[ing] disregard for the judicial process and for AAT's legally established rights."  Appx33.

[170] Appx30 (emphasis added).

### 3. The District Court Correctly Held That TEFLABS' Violation Of The Permanent Injunction Alone Established Willful Infringement

On appeal, TEFLABS ignores the undisputed fact that it continued infringing after the District Court entered a permanent injunction enjoining further infringement.[171]  As the District Court correctly concluded, "[t]his alone constitutes clear and convincing evidence that TEFLABS acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[172]  On subjective intent, the District Court concluded that TEFLABS' responsibility to take reasonable measures to implement a direct court order could not be absolved, and "its continued sales *cannot be excused*."[173]  Not only did TEFLABS' continued infringement clearly demonstrate willfulness, it was also one of two bases on which the District Court found this to be an exceptional case.[174]

---

[171] *See supra* n.57; A18 (FOF 30-33).

[172] Appx30.

[173] Appx30-31 (emphasis added).

[174] Appx36.  Notably, TEFLABS has not appealed the District Court's exceptional case ruling.

### 4.    The District Court's Willfulness Ruling, Based On A Higher Standard Than Is Now Required, Should Be Affirmed

The District Court found that TEFLABS willfully infringed AAT Bioquest's '165 Patent under *Seagate*, where AAT Bioquest had to prove by clear and convincing evidence both that:  (1) an "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"; and that (2) the risk of infringement was "either known or so obvious that it should have been known to the accused infringer."[175]  In *Halo*, the Supreme Court rejected this burden of proof and the two prong test as "unduly rigid" and lowered the burden of proof (to a preponderance of the evidence) and the standard of proof (eliminating objective recklessness prong).[176]  Because the District Court made its willfulness ruling based on the higher burden of proof and more demanding standard of proof, that ruling should be affirmed.[177]

---

[175] *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

[176] *Halo Elecs.*, 136 S.Ct. at 1932.

[177] In addition to finding willful infringement, the District Court made findings of fact and conclusions of law based on an analysis of the *Read* factors and awarded enhanced damages.  Appx32-33.  None of the District Court's findings or conclusions on enhanced damages are challenged on appeal.

**D.    Lost Profits Were Properly Awarded**

**1.    Standard Of Review And Legal Framework**

While the availability of lost profits is a question of law reviewed without deference, the underlying question of whether there exists a noninfringing substitute is a question of fact to be reviewed under the clearly erroneous standard.[178]  Under the clearly erroneous standard, a reviewing court may not reverse a lower court's finding of fact because it "would have decided the case differently," but only if "it is left with the definite and firm conviction that a mistake has been committed."[179]

TEFLABS only appeals the District Court's finding of no acceptable noninfringing alternatives.  If TEFLABS fails to demonstrate that the District Court clearly erred in finding that there are no acceptable noninfringing alternatives to Fluo-8 AM, the award of lost profits should be affirmed.

**2.    TEFLABS' Appeal Raises New Grounds Not Properly Before The District Court**

TEFLABS cites Simpson (2006) in an attempt to show that there are noninfringing alternatives to Fluo-8 AM (TF Br. 51), but fails to inform this Court

---

[178] *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1372-73 (Fed. Cir. 2008).

[179] *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal citations and quotations omitted).

that Simpson (2006) was *specifically excluded from evidence* at trial.[180]

TEFLABS does not challenge the District Court's evidentiary ruling. Instead, it simply ignores the ruling and impermissibly re-argues from the document. The District Court also properly rejected this document as failing to establish that the listed products "were even in the same class of products as Fluo-8."[181] Thus, even TEFLABS' inadmissible evidence fails to support its argument.

### 3. At Trial, AAT Bioquest Established That It Is Entitled To Lost Profits

On appeal, TEFLABS challenges whether there are acceptable noninfringing alternatives to the patented Fluo-8 AM product (TF Br. 49-51), which is relevant to *Panduit* factor 2[182] and *Micro Chemical* factor 1, in determining whether it is a two player market.[183] TEFLABS asserts that the Court erred by misapplying *Micro Chemical* and because, it contends, Fluo-3, Fluo-4, and Fluo-2 AM (also referred

---

[180] Appx2797-2799; Appx6.

[181] Appx24, n.7.

[182] A patentee must prove: (1) that there was demand for the patented product; (2) *absence of acceptable noninfringing substitutes*; (3) that AAT Bioquest had the manufacturing and marketing capability to meet the demand; and (4) the amount of the profit AAT Bioquest would have made." *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

[183] Where there is a two-supplier market, a patentee must show that (1) *the relevant market contains only two suppliers*, (2) its own manufacturing and marketing capability to make the sales that were diverted to the infringer, and (3) the amount of profit it would have made from these diverted sales. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F. 3d 1119, 1124 (Fed. Cir. 2003).

to as C34), are acceptable noninfringing alternatives to Fluo-8 AM.  TF Br. 49.
But, weighing the respective credibility and competency of the witnesses and
record evidence, the District Court evaluated each *Panduit* factor, including
whether there were any available acceptable noninfringing alternatives, and held
that AAT Bioquest proved that it is entitled to lost profits.[184]  TEFLABS does not
point to any error in the District Court's findings.

To be an acceptable noninfringing alternative, a product must have the
advantages of the patented invention that were important to people who purchased
an alleged infringer's product.[185]  Similarly, the relevant market is the patented
invention and other substitutes similar in physical and functional characteristics,
but excludes alternatives with "significantly different characteristics."[186]  The
evidence presented at trial, including admissions from TEFLABS, established that
Fluo-8 AM is the best indicator with superior qualities and characteristics over prior

---

[184] Appx22-26.

[185] *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 1004 (Fed. Cir. 2015) ("a product on the market which lacks the advantages of the patented product can hardly be termed a[n] [alternative] to the customer who wants those advantages").

[186] *Micro Chem.*, 318 F.3d at 1124 (quoting *Crystal Semiconductor Cor. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001)).

fluo indicators.[187]  Consequently, the fact that Fluo-8 AM is used to replace the

inferior indicators does not mean the relevant market includes those products.[188]

The District Court also heard unrebutted evidence that Fluo-8 AM expanded

the market by enabling assays that couldn't be performed by the prior fluo

indicators, including Fluo-3 and Fluo-4.[189]  Because Fluo-8 AM created new

markets in which other fluo indicators could not compete, they are not

noninfringing alternatives since they are not, in fact, alternatives.[190]  Thus, as the

District Court properly concluded, "ample evidence, including TEFLABS's own

marketing materials and customer communications, demonstrates that Fluo-8 has

unique and desirable qualities that distinguish it from other fluo indicators."[191]

---

[187] Appx2713-2714 (UF 20) (TEFLABS advertised Fluo-8 AM as "*an ideal indicator* for measurement of cellular calcium" (emphasis added)); Appx2874, Appx2878-2879 (Diwu Testimony); Appx3620-3623 (AAT Bioquest marketing materials); Appx3590-3594, Appx3606-3608, and Appx3610-3613 (TEFLABS marketing materials); Appx3640-3645 (TEFLABS emails to customers); Appx2937-2938 (Minta Testimony), Appx3646-3648 (testing demonstrated Fluo-8 AM is a superior indicator to Fluo-3 and Fluo-4).

[188] *Apple Inc.*, 786 F.3d at 1004.

[189] Appx2917 (Diwu Testimony); A1845 ("dramatically extend your testing capabilities . . . for calcium ions); A3623 ("Robust:  Enabling calcium assays with difficult receptors and cell lines"); *see also* Appx2104-2105 (¶¶52-53).

[190] *Apple Inc.*, 786 F.3d 983 at 1004.

[191] Appx23; *see also* Appx22-23 (citing Appx28794 (Diwu Testimony) and *Guidetech*, 2014 WL 4182340 at *5 (CEO testimony was "evidence that there were no acceptable noninfringing substitutes and that the market consisted of two players.")).

Moreover, AAT Bioquest demonstrated that customers sought out and switched to Fluo-8 AM because of these improved characteristics.[192]  TEFLABS admitted that it began selling Fluo-8 in response to a customer request and it decided to make the exact Fluo-8 AM structure because customers were asking for Fluo-8 AM.[193]  In fact, while TEFLABS initially named its copy-cat product Fluo-2, it had to tell customers that its product was really the Fluo-8 AM compound because customers were asking specifically for Fluo-8.[194]  TEFLABS even had to send two of its customers samples of its copycat product so that they could confirm that the copycat product was the same compound as Fluo-8 AM before they would agree to buy it.[195]  Thus, the inferior fluo indicators are not noninfringing alternatives regardless of the fact that they are sold in the same marketplace.[196]

---

[192] Appx12 (FOF 10), Appx2084-2084 (¶¶18-19), Appx1906 (2014 Malaria Journal Publication) ("Based on an appropriate Ca++ [calcium] affinity and its greater brightness than related fluorophores, Fluo 8 was selected and used . . . ."), Appx1894 (2014 Cell Calcium Publication) ("[F]luo-8 was used as the calcium indicator.  We find that fluo-8 provides a brighter fluorescence signal and better signal-to-noise ratio than fluo-4, which we had previously used.").

[193] Appx2712 (UF 18), Appx2938 (Minta Testimony).

[194] Appx2938 (Minta Testimony).

[195] Appx2939-2940 (Minta Testimony).  Med Chem 101 went on to become TEFLABS' largest customer.  Appx2712 (UF 17), Appx2940 (Minta Testimony).

[196] *See Standard Havens*, 953 F.2d at 1373 (Fed. Cir. 1991) ("[I]f purchasers are motivated to purchase because of particular features available only from the patented product, products without such features–even if otherwise competing in the marketplace–would not be acceptable noninfringing substitutes.").

TEFLABS' arguments do not cast doubt on this overwhelming evidence. TEFLABS first asserted that Fluo-8 has a smaller market share than Fluo-4 in the total fluo indicator market (which is not the relevant market here). Not only was this argument appropriately rejected by the District Court as "not relevant, since there is no evidence that Fluo-3 and Fluo-4 have the same desirable features as Fluo-8,"[197] it was also based on incomplete and unreliable evidence.[198]

Second, without providing a specific citation (to this Court[199] or the District Court[200]), TEFLABS asserted that the "Diwu declaration" (presumably one submitted during prosecution) establishes similar performance between Fluo-2 AM (referred to as C34) and Fluo-8 AM. The District Court properly struck this argument down as "incomprehensible attorney argument rather than record evidence."[201] Nonetheless, a review of the uncited evidence belies TEFLABS'

---

[197] Appx2565. Again, the "mere existence of a competing [product] does not make that [product] an acceptable [alternative]." *Apple*, 786 F.3d at 1004.

[198] TEFLABS' argument was based solely on Dr. Minta's review of "UC Berkeley receipts that [he] could locate" for sales of Fluo-3 and Fluo-4 between 2003 and 2007, and the general revenue reports comparing AAT Bioquest and TEFLABS' revenues between 2007 and 2014. Appx2565. The District Court properly concluded that "[t]his does little to shed light on Fluo-8's market share and how it changed over time." *Id.*

[199] TF Br. 51.

[200] Appx2557 ("TEFLABS does not indicate where in Dr. Diwu's affidavits he makes this claim.").

[201] Appx24.

argument.  The results actually demonstrate that Fluo-8 AM has a greater fluorescence intensity (i.e., brightness) than Fluo- 2 AM, and show only that Fluo-2 AM and Fluo-8 AM have superior performance over Fluo-3 AM, ***not*** that Fluo-2 AM is a noninfringing alternative with the same advantages and superior qualities that motivates the purchase of Fluo-8 AM.[202]

Finally, TEFLABS cites Kao (2012) for a comparison of Fluo-2, Fluo-3, and Fluo-4, and its supposed conclusion that Fluo-3 AM was the best overall indicator. TF Br. 51.  But an alleged improved efficacy over Fluo-2 and Fluo-4 does not establish that Fluo-3 possesses the particular advantages that motivate the purchase of Fluo-8 AM.  Thus, TEFLABS fails to identify any evidence that Fluo-3 qualifies as a noninfringing alternative to Fluo-8 AM.

Because AAT Bioquest presented overwhelming, unrebutted evidence of no acceptable noninfringing alternatives to Fluo-8 AM, and the District Court did not clearly err in so finding, the award of lost profits should be affirmed.

---

[202] *Compare* Appx926 at Fig. 3 (showing ~25000 for Fluo-8 when tested in HEK Cells) *with* Appx927 at Fig. 4 (showing ~21000 for Fluo 2 AM in HEK Cells).

## **MOTION TO STRIKE**

The following document is not in evidence and, therefore, should be stricken from TEFLABS' brief:

- USPTO PUBLIC PAIR 90/013,742 Decision on Reexamination Request mailed 6/29/2016 (TF Br. 30, 43)

The following documents were not before the District Court in connection with the summary judgment motions on validity and inequitable conduct, nor were they ever admitted into evidence[203]; therefore, they should be stricken from TEFLABS' brief and appendix[204]:

- U.S. Patent No. 4,603,209 ("Tsien '209") (TF Br. 9, 10-12, 29-30, 33-34)

- U.S. Patent No. 432 ("Tsien '432") (TF Br. 29-30, 33-34)

The following document was excluded from evidence at trial[205] and therefore should be stricken from the TEFLABS' brief section on lost profits:

- Simpson (2006) (TF Br. 51)

TEFLABS' improper citations to its own briefs should be stricken[206]:

---

[203] Appx3.

[204] *In re Cygnus*, 536 F.3d at 1352-53.

[205] Appx2797-2799; Appx6.

[206] *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335 (Fed. Cir. 2006) ("[A]rgument by incorporation, such as by referring to a summary judgment memoranda for legal analysis, is a violation of Fed. R. App. P. 28(a)(6).  *See Graphic Controls Corp. v.*

(continued...)

- Appx301-302 (TF Br. 32-33)

- Appx295 (TF Cr. 41)

- Appx296 (TF Br. 42)

- Appx264-315, Appx2126-2153 (TF Br. 42)

## **CONCLUSION**

AAT Bioquest respectfully requests that this Court affirm the District

Court's rulings of no anticipation, no inequitable conduct, willful infringement,

and lost profits.


Dated:  August 24, 2016              Respectfully submitted,

                                     KAYE SCHOLER LLP


                             By:    */s/ Krista M. Carter*

                                     DEBORAH E. FISHMAN
                                     KRISTA M. CARTER
                                     **KAYE SCHOLER LLP**
                                     3000 El Camino Real
                                     Building 2, Suite 400
                                     Palo Alto, CA  94306
                                     (650) 319-4500

                                     *Attorneys for Appellee*
                                     *AAT BIOQUEST INC.*

---

*Utah Med. Prods., Inc*., 149 F.3d 1382, 1385 (Fed. Cir.1998).  Therefore, those arguments are deemed waived.").

# <u>CERTIFICATE OF SERVICE</u>

I certify that on August 24, 2016, a true and correct copy of the foregoing

Brief of Appellee AAT Bioquest, Inc. was electronically filed with the Court and

served on all parties of record via the Court's CM/ECF system.


By:   <u>*/s/ Krista M. Carter*</u>

KRISTA M. CARTER
*Attorneys for Appellee*
*AAT BIOQUEST INC.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the Brief of Appellee AAT Bioquest, Inc. complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 13,962 words, exclusive of those materials not required to be counted under Rule 32(a)(7)(B)(iii).

This brief complies also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(6), and has been prepared in a proportionally spaced typeface using Microsoft Word 10 in 14pt Times New Roman font.

By:  _/s/ Krista M. Carter_
KRISTA M. CARTER
*Attorneys for Appellee*
*AAT BIOQUEST INC.*