**2016-2056**

In The
# United States Court Of Appeals
# For The Federal Circuit

## AAT BIOQUEST, INC.,

*Plaintiff-Appellee,*

v.

## TEXAS FLUORESCENCE LABORATORIES, INC.,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, CASE NO. 4:14-CV-03909-DMR
DONNA M. RYU, MAGISTRATE JUDGE

————————

## REPLY BRIEF OF APPELLANT

————————

**Rick B. Yeager**
RICK B YEAGER, ATTORNEY
**10805 Mellow Lane**
**Austin, TX 78759**
**(512) 779-9525**

*Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>:

TABLE OF AUTHORITIES ......................................................................... iii

ARGUMENT .................................................................................................1

    A.    REPLY TO APPELLEE'S NO ANTICIPATION
        ARGUMENTS ................................................................................1

        1.    The District Court erred as a matter of law in applying
              *Finisar* and *Atofina* to find that the '165 patent claim 1
              compound ("C33" or "Fluo-8 AM") was not anticipated
              by the Tsien '673 Patent ..............................................................1

        2.    TEFLABS pointed out that the examiner had, in two
              anticipation rejections, explicitly mapped the Fluo-8
              claim elements to the Tsien '673 claims.....................................9

        3.    TEFLABS presented sufficient evidence to avoid a
              finding of no anticipation.............................................................9

        4.    Appellee's Brief no anticipation arguments rely on the
              misleading and false declaration statements by "expert"
              Patton.......................................................................................16

        5.    The District Court erred in denying TEFLABS' Motion
              for Reconsideration to review the Tsien '209 Patent................23

    B.    REPLY TO APPELLEE'S NO INEQUITABLE CONDUCT
        ARGUMENTS ...............................................................................24

        1.    TEFLABS has presented sufficient evidence related to
              anticipation and obviousness to avoid a finding of no
              inequitable conduct ...................................................................24

        2.    TEFLABS has presented sufficient evidence related to
              lack of written description to avoid a finding of no
              inequitable conduct ...................................................................25

i

3.      Post-*Therasense* cases support reversal and remand of the District Court's no inequitable conduct ruling ...................32

4.      Specific responses to Appellee's arguments.............................38

C.      REPLY TO APPELLEE'S WILLFUL INFRINGEMENT ARGUMENTS .............................................................................40

1.      TEFLABS' Defenses were not Objectively Unreasonable ......40

2.      In this case, the prosecution history is specific enough relative to the single compound in question to obviate a "Person of Ordinary Skill in the Art ("POSA") analysis for obviousness or written description......................................40

3.      The USPTO reexamination should be admissible to further support the "objectively reasonable" aspect of TEFLABS' anticipation, obviousness, and inequitable conduct defenses ...................................................................41

4.      TEFLABS' limited and inadvertent Post-Injunction Sales were not the basis for punitive treble damages.........................41

D.      REPLY TO APPELLEE'S LOST PROFIT ARGUMENTS..............42

1.      There is no evidence in the record to support Appellee's assertion that any portion of Fluo-8 sales were for uses that could not have been performed by non-infringing Fluo-3, Fluo-4, or Fluo-2 AM...................................................42

E.      TEFLABS' RESPONSE TO MOTION TO STRIKE ........................43

CONCLUSIONS AND RELIEF SOUGHT ............................................................44

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*American Calcar, Inc. v. American Honda Motor Co.*,
    768 F.3d 1185 (Fed. Cir. 2014) ....................................................................32

*Apotex Inc. v. UCB, INC.*,
    763 F.3d 1354 (Fed. Cir. 2014) ....................................................................35

*Atofina v. Great Lakes Chem. Corp.*,
    441 F.3d 991 (Fed. Cir. 2006) ........................................................................1

*Finisar Corp. v. DirecTV Grp., Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008) ...................................................................1, 8

*Ohio Willow Wood Co. v. Alps South, LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) ....................................................................36

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .......................................................32, 38, 39

## ARGUMENT

**A.     REPLY TO APPELLEE'S NO ANTICIPATION ARGUMENTS**

**1.     The District Court erred as a matter of law in applying *Finisar* and *Atofina* to find that the '165 patent claim 1 compound ("C33" or "Fluo-8 AM") was not anticipated by the Tsien '673 Patent.**

One factor in deciding whether an example compound is anticipated by prior art is how much difference there is between the new claimed compound and the closest example compound or small genus disclosed in the prior art.  This factor is represented on the x-axis in Figure 1, below, with the "Degree of Change" increasing from right to left.



1

The other principal factor is the "degree of surprise" disclosed by the new compound relative to the prior art.  This factor is represented by the y-axis in Figure 1, with increasing "surprise" from bottom to top.

The bottom left corner in Figure 2 shows that no "unexpected results" are required to claim the new compound if that compound was not disclosed or claimed in the prior art.



In the top right corner, no degree of "unexpected results", in the same field of use, will overcome a specific example — but it may be possible to avoid anticipation if a new and unforeseen use for the new compound is disclosed.

In the mid-section of the graph, the required degree of "unexpected results" increases from a low threshold when the new compound has a high degree of change from prior art, to a high threshold when the new compound is very similar to a specific prior art example.



Figure 3 - Three Perspectives on "Fluo-8"

Figure 3 represents the present case anticipation issue from three perspectives shown in the oval.  There was a very broad genus claim and a specific "fluo-2" example in Tsien '673 patent. The fluo-2 compound is represented in the lower right corner.

Plaintiffs narrowed its claims to **C33** and **C34**.  The examiner upheld the rejection of **C34** ("Fluo-2 AM") as the claimed AM ester version of the fluo-2 example.  The second compound, **C33** ("Fluo-8 AM"), differed from **C34** only by position k=H versus k=methyl:



**C34**                    **C33**

After two anticipation rejections [Appx858-865, Appx824-831], the examiner allowed **C33** based on arguments made in Plaintiff's brief.

The **examiner's initial perspective** is the middle circle- <u>normally</u> H and methyl substitutions were "*prima facie* obvious" [Appx774, line3].

Plaintiff overcame a final rejection of **C33**, and the presumption that H and methyl substitutions are obvious, by arguing in its appeal brief that:

4

- the Tsien '673 claims covered a vast number of compounds;

- there was little guidance for selecting compound **C33**; and

- the brightness results of <u>both</u> **C34** and **C33** were unexpected. [Appx74]

The "vast combinations/little guidance" arguments address the scope of the prior art Tsien '673 Patent, while the "unexpected results" argument promotes the alleged invention. As discussed in detail below, all of these arguments were false and misleading.

The examiner accepted **Plaintiff's perspective** (the top circle) that the compound demonstrated sufficient "unexpected results" to overcome the normal (middle circle) anticipation rejection and any obviousness rejection.

The lower circle is **TEFLABS' perspective** that k=H was a well-known affinity variant, which effectively <u>increases</u> the required showing of unexpected results; and that Plaintiff's only showing of unexpected results was in the form of misleading affidavits - there is no support for **C33** in the '165 patent specification.

The foregoing are traditional types of evidence arguments for anticipation, and some obviousness issues, that are discussed in detail in the following sections.

**<u>In addition to these evidentiary arguments, TEFLABS argues that the District Court erred, as a matter of law, in finding no anticipation because a single substitution difference creates a very high threshold of surprise, and there was no showing of surprise in the '165 specification.</u>**



Figure 4 is on a more accurate scale showing **C33** further to the right (a single change versus up to 11 independent substituent changes within the Tsien '673 claimed substituents), with a steeper threshold requirement, where a <u>single change has a much higher threshold</u> than multiple, or more exotic, changes.

6

Compounds **C33** and **C34** were sold by Plaintiff as "Fluo-8 AM" and "Fluo-8H AM" - affinity variations of the same Fluo-2 indicator family. [Appx385, Appx184, Appx2926]  Unless there is some showing of significant unexpected differences of **C33** from its rejected sister **C34**, they both should be rejected. Compound **C34** was properly rejected as anticipated by Tsien '673; and there is no evidence to support significant unexpected differences between it and its **C33** sibling:

- Compound **C33** is not disclosed in the specification, and there is no discussion of that compound;

- there is no discussion in the specification of any beneficial use of k=H (as opposed to the long list of other substituents at j, k, m, or n) [Appx57]; and

- Plaintiff relied affidavits citing alleged advantages of a single attribute to support a compound that was not disclosed in the specification. Those Diwu affidavits showed similar brightness of **C33** and the rejected **C34** [Appx894]:



Tsien '673 satisfied the *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) requirement by claiming eight affinity substituents at position k [Appx356, claim1], and presenting the fluo-2 example.   By incorporating the Tsien 1980 BAPTA paper [Appx345, col2, line54], Tsien showed that the eight position k substituents had a clear purpose- they were claimed in order to provide a predictable range of useful affinities for fluo-2 and other indicators. [Appx323 ¶2] By 2007, that guidance had been followed for nearly two decades with BAPTA/fluorescein indicator families. [Appx379-382]

In this case, all position k substituents claimed by Tsien '673 would be expected to provide similar spectral results, and the patentability of **C33** succeeds

or fails with the parent **C34** compound unless k=H is shown to be extraordinary.

TEFLABS argues, as a matter of law, that the Court erred in finding no

anticipation under the fact of this case where (a) there was a <u>single difference</u>

between **C33** and **C34**; and (b) there was <u>no disclosure</u> in the '165 patent of either

the claimed compound **C33** or alleged advantages of k=H.

To permit the removal of **C33** from the scope of the claims under these

circumstances is to effectively (a) require a specific example for every claimed

compound in a genus claim; and (b) permit a subsequent applicant to patent a

compound without demonstrating <u>why</u> it should be excepted from an earlier genus

claim (i.e without demonstrating an actual invention).

### 2. TEFLABS pointed out that the examiner had, in two anticipation rejections, explicitly mapped the Fluo-8 claim elements to the Tsien '673 claims.

"THE COURT: ... given that your papers admit there's two differences [k=H and AM version]… that the examiner already noted. How do you get around that?

MR. YEAGER: .... pages 66 through 73 of TEFLABS' Exhibit 12 is the final rejection, which followed an earlier rejection. ***Both of those rejections were for anticipation where the examiner laid out exactly where those elements of Fluo-8 were in the Tsien patent.*** [MSJ Hearing  Appx2485, line 9 - Appx2486, line 2]

### 3. TEFLABS presented sufficient evidence to avoid a finding of no anticipation.

The table below summarizes TEFLABS' MSJ and Reply anticipation

arguments and evidence.  The bolded entries in the "Evidence" column refer to

specific cited support.  These arguments also relate to the inequitable conduct

defenses of anticipation and obviousness.

| ARGUMENT | EVIDENCE |
|---|---|
| **The examiner would normally have rejected C33 on the grounds that H for methyl substitutions are obvious; but allowed C33 because of**<br>**(a) the argument that Tsien '673 presented "vast possibilities" and "little guidance" to select C33; and**<br>**(b) the unexpected results reported in the Diwu affidavit.** | |
| … C33 was claimed in Tsien '673 and should be rejected on the same basis as C34 [Appx291 ¶C] | **Final Rejection - Dec 16, 2013** [Appx2130, Appx824, Appx292]<br><br>**Reasons for Allowance** - The examiner cited very specific reasons for allowance [MSJ Appx292-293] |
| The examiner rejected Plaintiff's argument that AM esters of fluo-2 were not anticipated [Appx292 ¶E] | "The rejection of claim 33 under 25 U.S.C. 102(b) as being anticipated by Tsien U.S. 5,049,673 is withdrawn. As per the arguments in the brief the elected species of claim 33: [structure] is not the alpha-acyloxyalkyl (AM) ester of the compound fluo-2 of Tsien.  The compound in cancelled claim 34 is the AM ester of fluo-2.  *The compounds differ by a methyl group.*  This compound is not anticipated. [1] *While H to Me analogs are generally prima facie obvious,* the affidavit of inventor Diwu |
| The examiner accepted Plaintiff's argument that C33 should not be deemed covered by Tsien '673 claims [Appx293 ¶G[1]] | filed on August 28 2013 is sufficient to rebut such a rejection on the grounds of *unexpected results.* [2] Since the compound of claim 33 is better than the Tsien compounds in various calcium imaging assays (see page 4 of the August 28, 2013 affidavit) any possible 103(a) rejection over Tsien for this particular compound has been overcome. Moreover, the fluo-2 compound was described by Tsien as the poorest performer in the patent specification [3] ('because protonation has such a powerful effect on the fluorescence and is spectrally indistinguishable from a drop in [Ca2+], fluo-2 is too pH sensitive for general use …' column 21, lines 65-68, U.S. '618), which gives *little motivation to select this compound* [4] *as one for further manipulation* [5], *i.e. demethylation.* [6]" |
| **The Diwu affidavit was misleading and false.  The results were not unexpected because**<br>**(a) Fluo-2 has an excitation maxima closer to the 488nm laser;**<br>**(b) Fluo-2 omitted the hydrophobic chlorine substituents of Fluo-3; and**<br>**(c) "Fluo-2 AM" and "Fluo-8 AM" are sister affinity versions of the same indicator.** | |

| ARGUMENT | EVIDENCE |
|---|---|
| The Diwu affidavit was misleading by not acknowledging importance of light source wavelength [Appx293-294 ]<br><br>About half of the apparent Fluo-2 brightness advantage was due to its peak excitation being closer to the 488nm laser. [Appx295] | **Gee(2000) comparison of Fluo-4 and Fluo-3 spectra** [Appx361]<br><br> |
| Improved loading was expected because of fluo-2's lack of chlorine substituents and lower molecular weight [Appx296] | **Kao(2012)** - (published before 2013 Diwu affidavit) [Appx390] |
| Tsien did not characterize fluo-2 as "the poorest performer" ; Tsien selected fluo-3 as preferred ... studies show fluo-3 to be best overall [Appx296] | **Thomas (2000)** [Appx368];<br>**Kao (2012)** [Appx390];<br>The Kao Declaration [Appx2158-2159 ¶8] explained why Tsien preferred fluo-3 for *accuracy* and why flou-2 would be acceptable for *semi-quantitative* screening |
| Plaintiff could not allege "commercial success" ... lukewarm market reception after 7 years of marketing lower price "Fluo-8" [Appx297] | The parties reported flat revenue [Minta Aff. Appx2190]<br><br>Based on royalty income, Dr. Minta estimated Fluo-8 market share at less than 10%. [Appx2191] |
| The affidavits deceptively named the sister compounds of Fluo-8 AM and "Fluo-2 AM" versus "Fluo-8H AM" [Appx303] | Diwu affidavit  [Appx923]<br><br> |
| **Plaintiff's vast possibilities argument misrepresented the facts [Appx2130]** ||

11

| ARGUMENT | EVIDENCE |
|---|---|
| The provisional patent application table shows applicant understood actual substituents of Fluo-3 and Fluo-4 were consistent and well-established [Appx298] | **provisional application table** [Appx298]<br><br><br><br>Formula 1<br><br>| Indicator | X | Y | Z | $R^1$ | $R^2$ | $R^4$ | $R^5$ | T | U | V | j | k | m | n |<br>|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|<br>| Fluo-3 | O | O | O | H | Cl | H | Cl | H | H | H | H | Me | H | H |<br>| Fluo-4 | O | O | O | H | F | H | F | H | H | H | H | Me | H | H |<br>| Rhod-2 | N(Me)₂ | N(Me)₂ | O | H | H | H | H | H | H | H | H | Me | H | H | |
| All 24 of the Fluo example compounds in the '165 patent also fixed 7 of the 11 Tsien '673 positions   [Appx298] | **Table 1 summary of '165 example compounds** [Appx287]<br><br> |

| ARGUMENT | EVIDENCE |
|---|---|
| For a given fluo family, one need only select k from [affinity] 8 possibilities; and pick T=H, OH, or COOH [Appx299] | [Tsien '673 claim 1  Appx356]<br><br>X is H, Me, COOH, F, Cl, Br, I, or NO₂; |
| Prior art Fluo-3 and Fluo-4 and the 24 example fluo compounds in the '165 specification changed only family Tsien "Z1/Z2"; affinity ('165 "k" ; Tsien "X" ('165 position k; and Tsien "W"   [Appx300]<br><br>"… the only 'choosing' to do among the Tsien patent claimed substituents was 6 families, 8 affinity versions and 3 position T substituents. Since 2 of the 6 families (Fluo-3 and Fluo-4) had already been commercialized, it was obvious to take a closer look at the Fluo-2 family." [Appx300] | <br>Figure 5<br>**MSJ Fig. 5** [Appx301] - all other positions fixed per above |
| **Plaintiff's "little motivation" argument was false. [Appx2130] k=H (C33) was known since 1980, and was the only Tsien claimed substituent that could be expected to match Fluo-3 and Fluo-4 affinity [Appx297 ¶4]** | |
| With Fluo-3 and Fluo-4 established, Fluo-2 was the best place to look- one need only evaluate affinity substituents and position k to determine the best Fluo-2 indicator for a particular application [Appx299] | [Minta Decl Appx2194 ¶25]  - knew from decades of prior art research on fluorescein that fluorescence would be lost or diminished when many types of substitutions were attempted on the fluorophore<br><br>[Minta Decl Appx2201 ¶45]  - difficult to design viable indicators that can be synthesized |

| ARGUMENT | EVIDENCE |
|---|---|
| The only selection required for C33 was at position k.  Affinity of Fluo-2 was substantially higher (Kd was lower) than Fluo-3 and Fluo-4 [Appx301] | Table 2- $K_d$ ($Ca^{2+}$) nM <br><br> **MSJ- Table 2**- dissociation constants [Appx302] <br><br> [Minta Declaration Appx2199] |
| Halogens were known to decrease affinity by an order of magnitude (too much correction) ;  k=H was the only Tsien claimed substituent that would provide a less dramatic decrease in affinity [Appx301] | Table 5- Fluo indicator affinities |
| In 1980, Tsien reported k=H, methyl, and Br; showed k-H had 40% decrease in affinity relative to k=methyl [Appx302] | [Minta Decl. Appx2194 ¶23 ] <br><br> [Tsien BAPTA Paper Appx316-323] |

Table 2- $K_d$ ($Ca^{2+}$) nM

| Indicator | Position X Substituent  (Position "k" in '165 Patent) | | | |
|---|---|---|---|---|
| | CH₃ | H | F | NO₂ |
| Fluo-2 | 232 (1) | 389 (2) | 1860 (3) | |
| Fluo-4 | 350 | | 2300 | 90,000 |
| Fluo-3 | 390 | | | |

Table 5- Fluo indicator affinities

| Z1, Z2 | Compound | Substituent ("k" or "X") | | | |
|---|---|---|---|---|---|
| | | CH₃ | H | F | NO₂ |
| Cl | Fluo-3 | 390 | | | |
| | Calcium Green-1 | | 190 | | |
| | Calcium Green-5N | | | | 14,000 |
| F | Fluo-4 | 345 | | | |
| | Fluo-5F | | | 2,300 | |
| | Fluo-5N | | | | 90,000 |
| | Oregon Green-BAPTA 1 | | 170 | | |
| | Oregon Green-BAPTA 5N | | | | 20,000 |
| H | Fluo-2 ("8") | 232 | 389 | 1,860 | |

14

| ARGUMENT | EVIDENCE |
|---|---|
| Although Kd was one of the most critical factors for indicator selection, there was very limited discussion in '165 patent  [Appx302]<br><br>'165 specification provides no guidance on selection of j, k, m or n [Appx303] | **Simpson(2006)**<br><br>[per Minta Decl Appx2192]:<br><br> |
| There is no discussion in the specification, affidavits, or responses to office action that would alert examiner to the critical substitution of k=H to provide the desirable affinity [Appx303] | {not disputed} |

Table 3- Commercially Available Fluorescein Indicators - 2006

| | | | Tsien Position | Z1/Z2 | X | - | W | |
|---|---|---|---|---|---|---|---|---|
| | | | 165 Position | R2/R5 | k | j | U/T | |
| | Indicator | Direct Link | AM load | | k | | | Kd (nM) |
| 1 | Oregon Green 488 BAPTA-1 | no | ✔ | F | H | | COOH | 170 |
| 2 | Calcium Green-1 | no | ✔ | Cl | H | | COOH | 190 |
| 3 | Fluo-4 | yes | ✔ | F | $CH_3$ | | H | 345 |
| 4 | Fluo-3 | yes | ✔ | Cl | $CH_3$ | | H | 390 |
| 5 | Fluo-LOJO | yes | ✔ | F | [1] | | H | 440 |
| 6 | Fluo-KOJO | yes | ✔ | Cl | [1] | | H | 500 |
| 7 | Calcium Green- 2 | no | ✔ | Cl | [2] | | COOH | 550 |
| 8 | Fluo-LR | yes | ✔ | F | [3] | | H | 550 |
| 9 | Oregon Green 488 BAPTA-2 | no | ✔ | F | [2] | | COOH | 580 |
| 10 | Fluo-MOMO | yes | ✔ | F | [4] | | H | 710 |
| 11 | Fluo-NOMO | yes | ✔ | | [4] | | H | 800 |
| 12 | Fluo-5F | yes | ✔ | F | F | | H | 2,300 |
| 13 | Oregon Green 488 BAPTA-6F | no | ✔ | F | H | F | COOH | 3,000 |
| 14 | Fluo-4FF | yes | ✔ | F | F | F | H | 9,700 |
| 15 | Calcium Green- 5N | no | ✔ | Cl | $NO_2$ | | COOH | 14,000 |
| 16 | Oregon Green 488 BAPTA-5N | no | ✔ | F | $NO_2$ | | COOH | 20,000 |
| 17 | Fluo-3FF | yes | ✔ | F | F | F | H | 41,000 |
| 18 | Fluo-5N | yes | ✔ | F | $NO_2$ | | H | 90,000 |

In view of the two anticipation rejections where the examiner mapped the '165 claim 1 structure to the Tsien '673 Patent claims, TEFLABS met its burden of clear and convincing evidence by demonstrating through affidavit and published prior art that:

15

(a)    there were a limited number of relevant substituents for

BAPTA/fluorescein indicators;

(b)    there was specific 1980 guidance to lower fluo-2 affinity, in order to

more closely match the desired Fluo-3 and Fluo-4 affinities, with k=H

versus methyl; and

(c)    the affidavits of unexpected results were misleading and false.

In view of this evidence, it was error for the District Court to grant Plaintiffs

Motion for Summary Judgment of no anticipation.

**4.    Appellee's Brief no anticipation arguments rely on the misleading and false declaration statements by "expert" Patton.**

Appellee's arguments are presented in italics below, followed by a summary of

TEFLABS' evidence which refutes those statements.

*a.    Tsien '673 claim 1 "literally encompasses a genus of more than a **billion** potential potential calcium indicators" [Appellee's Brief pp29-30]*



Figure 5

**MSJ Fig. 5** [Appx301] - all other positions fixed per above

16

b.     *"... no one offered a fluo indicator with Hydrogen (H) at the k position before AAT Bioquest did in 2007." [Appellee's Brief p32]*

The Simpson (2006) table of commercial indicators show both Oregon Green and Calcium Green with affinity versions having k=H. [Appx2192] "In addition to Fluo-3 and Fluo-4, the Fluo indicator market includes Calcium Green$^{TM}$ and Oregon Green$^{TM}$". [Appx2191 ¶15]

### Simpson(2006)

### [per Minta Decl Appx2192]:

**Table 3- Commercially Available Fluorescein Indicators - 2006**

|   | | Tsien Position | Z1/Z2 | X | - | W | |
|---|---|---|---|---|---|---|---|
|   | | 165 Position | R2/R5 | k | j | U/T | |
|   | Indicator | Direct Link | AM load | | | | Kd (nM) |
| 1 | Oregon Green 488 BAPTA-1 | no | ✔ | F | H | | COOH | 170 |
| 2 | Calcium Green-1 | no | ✔ | Cl | H | | COOH | 190 |
| 3 | Fluo-4 | yes | ✔ | F | CH₃ | | H | 345 |
| 4 | Fluo-3 | yes | ✔ | Cl | CH₃ | | H | 390 |
| 5 | Fluo-LOJO | yes | ✔ | F | [1] | | H | 440 |
| 6 | Fluo-KOJO | yes | ✔ | Cl | [1] | | H | 500 |
| 7 | Calcium Green- 2 | no | ✔ | Cl | [2] | | COOH | 550 |
| 8 | Fluo-LR | yes | ✔ | F | [3] | | H | 550 |
| 9 | Oregon Green 488 BAPTA-2 | no | ✔ | F | [2] | | COOH | 580 |
| 10 | Fluo-MOMO | yes | ✔ | F | [4] | | H | 710 |
| 11 | Fluo-NOMO | yes | ✔ | | [4] | | H | 800 |
| 12 | Fluo-5F | yes | ✔ | F | F | | H | 2,300 |
| 13 | Oregon Green 488 BAPTA-6F | no | ✔ | F | H | F | COOH | 3,000 |
| 14 | Fluo-4FF | yes | ✔ | F | F | F | H | 9,700 |
| 15 | Calcium Green- 5N | no | ✔ | Cl | NO₂ | | COOH | 14,000 |
| 16 | Oregon Green 488 BAPTA-5N | no | ✔ | F | NO₂ | | COOH | 20,000 |
| 17 | Fluo-3FF | yes | ✔ | F | F | F | H | 41,000 |
| 18 | Fluo-5N | yes | ✔ | F | NO₂ | | H | 90,000 |

17

    c.    *"nothing about these different and distinct indicators [Oregon Green and Calcium Green] would have prompted one of ordinary skill in the art to look at them in order to solve the problems that existed with fluo indicators at the time of the invention in 2007" [Appellee's Brief p32]*

As recommended in the Tsien 1980 BAPTA Paper [Appx323], commercial Fluo indicators were offered with different, predictable, affinity versions. The use of k=H was the only demonstrated affinity between methyl ($CH_3$) and fluorine:

Table 2- $K_d$ ($Ca^{2+}$) nM

| Indicator | Position X Substituent (Position "k" in '165 Patent) | | | |
|---|---|---|---|---|
| | $CH_3$ | H | F | $NO_2$ |
| Fluo-2 | 232 (1) | 389 (2) | 1860 (3) | |
| Fluo-4 | 350 | | 2300 | 90,000 |
| Fluo-3 | 390 | | | |

**MSJ- Table 2**- dissociation constants [Appx302]

[Minta Declaration Appx2199]

Table 5- Fluo indicator affinities

| Z1, Z2 | Compound | Substituent ("k" or "X") | | | |
|---|---|---|---|---|---|
| | | $CH_3$ | H | F | $NO_2$ |
| Cl | Fluo-3 | 390 | | | |
| | Calcium Green-1 | | 190 | | |
| | Calcium Green-5N | | | | 14,000 |
| F | Fluo-4 | 345 | | | |
| | Fluo-5F | | | 2,300 | |
| | Fluo-5N | | | | 90,000 |
| | Oregon Green-BAPTA 1 | | 170 | | |
| | Oregon Green-BAPTA 5N | | | | 20,000 |
| H | Fluo-2 ("8") | 232 | 389 | 1,860 | |

18

> d.   *"... a person of ordinary skill would not have been "motivated to try" to develop any fluo indicator with a non-electron withdrawing group at position X, let alone one with Hydrogen (H) at position k."* [1] *[Appellee's Brief p33]*

The MSJ [Appx301-302] discusses the motivation to increase the Fluo-2 [k=methyl] slightly in order to more closely match Fluo-3 and Fluo-4 without overshooting the correction with a halogen substituent:

> e.   *"...there is no single or uniform desired binding affinity. Thus one would not have a prioi set out to design an indicator with a particular binding affinity unless he/she had a particular experiment in mind."* *[Appellee's Brief p33]*

The motivation is to provide a useful range of indicators. Dr. Minta's declaration noted the strong preference of the "medium affinity" (C33) AM version [Appx2199]:

> 41. As shown in table below, 98% of TEFLABS 2014 Fluo-2 sales were AM versions; and 94.7% of all Fluo-2 sales were Fluo-2 medium affinity AM (k =H).

Table 6- **TEFLABS 2014 FLUO-2 Sales (%)**

|  | High Affinity | Medium Affinity | Low Affinity |
|---|---|---|---|
| Salt | 0.0 | 1.7 | 0.4 |
| AM | 2.1 | 94.7 | 1.1 |

---

[1] As discussed in the inequitable conduct section, only 2 of 32 example compounds in Plaintiff's provisional patent application had H at the X positions ($R_2$ and $R_5$), and neither of those examples had k=H.

**Table 2- $K_d$ ($Ca^{2+}$) nM**

| Indicator | Position X Substituent (Position "k" in '165 Patent) | | | |
|---|---|---|---|---|
| | CH$_3$ | H | F | NO$_2$ |
| Fluo-2 | 232 (1) | 389 (2) | 1860 (3) | |
| Fluo-4 | 350 | | 2300 | 90,000 |
| Fluo-3 | 390 | | | |

(1) ***Fluo-2 high affinity AM*** [TEFLABS: Fluo-2 HA ; AAT Bioquest: FLUO-8H]
(2) ***Fluo-2 medium affinity AM*** [TEFLABS: Fluo-2 MA ; AAT Bioquest: FLUO-8]
(3) Fluo-2 low affinity AM [TEFLABS: Fluo-2 LA ; AAT Bioquest: FLUO-8L]

    f.     *"..there are several, different positions on fluo indicators that one of ordinary skill in the art could have used to modify binding affinity were there motivation to do so" [Appellee's Brief pp33-34]*

As shown in Simpson (2006), position k was, by far the most common. As discussed below, position k was the only "chelating" position varied in the 34 example compounds of the '165 patent Specification. All 34 examples set positions j, m, and n =H. [Appx287]

20

**Simpson(2006)**

[per Minta Decl Appx2192]:

Table 3- Commercially Available Fluorescein Indicators - 2006

| | | | | Tsien Position | Z1/Z2 | X | - | W | |
| | | | | 165 Position | R2/R5 | k | j | U/T | |
| | Indicator | Direct Link | AM load | | | | | | Kd (nM) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Oregon Green 488 BAPTA-1 | no | ✔ | F | | H | | COOH | 170 |
| 2 | Calcium Green-1 | no | ✔ | Cl | | H | | COOH | 190 |
| 3 | Fluo-4 | yes | ✔ | F | | $CH_3$ | | H | 345 |
| 4 | Fluo-3 | yes | ✔ | Cl | | $CH_3$ | | H | 390 |
| 5 | Fluo-LOJO | yes | ✔ | F | | [1] | | H | 440 |
| 6 | Fluo-KOJO | yes | ✔ | Cl | | [1] | | H | 500 |
| 7 | Calcium Green- 2 | no | ✔ | Cl | | [2] | | COOH | 550 |
| 8 | Fluo-LR | yes | ✔ | F | | [3] | | H | 550 |
| 9 | Oregon Green 488 BAPTA-2 | no | ✔ | F | | [2] | | COOH | 580 |
| 10 | Fluo-MOMO | yes | ✔ | F | | [4] | | H | 710 |
| 11 | Fluo-NOMO | yes | ✔ | | | [4] | | H | 800 |
| 12 | Fluo-5F | yes | ✔ | F | | F | | H | 2,300 |
| 13 | Oregon Green 488 BAPTA-6F | no | ✔ | F | | H | F | COOH | 3,000 |
| 14 | Fluo-4FF | yes | ✔ | F | | F | F | H | 9,700 |
| 15 | Calcium Green- 5N | no | ✔ | Cl | | $NO_2$ | | COOH | 14,000 |
| 16 | Oregon Green 488 BAPTA-5N | no | ✔ | F | | $NO_2$ | | COOH | 20,000 |
| 17 | Fluo-3FF | yes | ✔ | F | | F | F | H | 41,000 |
| 18 | Fluo-5N | yes | ✔ | F | | $NO_2$ | | H | 90,000 |

     g.    *"if one skilled in the art wanted to approximate the binding affinity of Fluo-3 and FLuo-4, the most obvious way is to use the **same** "methyl" group at the k position. [Appellee's Brief p34]*

Tsien '673 reported substantially different affinities (Kd) for fluo-1 (0.7 micromolar); fluo-2 (0.37 micromolar); and fluo-3 (0.45 micromolar). All 3 example compounds had k=methyl. [Appx355 see last column]:

TABLE I

| Dye | Fluorescence maxima (nm) with excess Ca | | Quantum efficiencies | | Fluorescence ratio, excess | Effective dissociation |
| | excitation | emission | zero Ca | excess Ca | vs. zero Ca | Constant $K_d$ for $Ca^{2+}$ |
|-----|-----------|----------|---------|-----------|-------------|-------------------------------|
| rhod-1 | 556 | 578 | .0014 | .021 | 15 | 2.3 microM |
| fluo-1 | 499 | 521 | .0042 | .014 | 3.3 | 0.7 microM |
| rhod-2 | 553 | 576 | .03 | .102 | 3.4 | 1.0 microM |
| fluo-2 | 493 | 518 | .004 | .125 | 31 | 0.37 microM |
| fluo-3 | 506 | 526 | .0051 | .183 | 36–40 | 0.45 microM |

A change at position(s) j. k. m. and/or n of the fluo-2 example is necessary to adjust the significantly lower $K_d$ (higher affinity) of fluo-2 to match fluo-3.

Although the '165 Patent presented more than 100 independent substituents at positions j, k, m, and n [Appx2203 ¶52] to adjust the "chelating properties", there is no evidence that Plaintiffs evaluated any potential adjustment other than what Tsien 1980 BAPTA taught - predictably decreasing the fluo-2 affinity by about 40% by substituting H for methyl at position k.[Appx321]

The 34 example compounds in the '165 patent presented only 3 substituents at position k - methyl, hydrogen, and fluorine (a halogen)[2] [MSJ Table 1, Appx287]  There is no discussion in the '165 specification about the merits of k=H or any other potential j, k, m or n substituents; but Appellee would now have us believe that Plaintiff's limitation of chelating substituents to methyl, hydrogen, and a halogen, at the single position k, was unrelated to Tsien's 1980 BAPTA paper teachings, or the teachings of prior art commercial compound affinity versions of fluorescein/BAPTA indicators.

_____

[2] The BAPTA paper presented k =  methyl, H, and Bromine (a halogen) [Appx317]

The lack of experimentation with new claimed substituent positions V, R3, R4, j, m, and n; coupled with Dr. Minta's recognition that most of the '165 examples could not be effective indicators [Appx2201-2202] led TEFLABS to conclude that the '165 specification was a sham that was constructed with dummy "hypothetical" substituents that were never synthesized [Appx2002], but served to conceal the desired fluo-2 derivative compounds such as C33 and compound 306 (the elected species in divisional application 13/374,967) [Appx285] that were claimed and anticipated by Tsien '673. Despite billions of legitimate potential design-around variations which were not claimed by Tsien, nine of the 34 examples in the '165 patent specification were claimed by Tsien [the non-highlighted rows of Table 1; Minta Affidavit Appx2201 ¶47]

### 5. The District Court erred in denying TEFLABS' Motion for Reconsideration to review the Tsien '209 Patent.

By citing the 1980 BAPTA paper and explicitly extending its teachings on predictable affinity modification to BAPTA/fluorophore compounds, the '209 paper leaves no doubt that the Tsien '673 claimed substituents at position k are provided in order to offer indicators with predictable useful ranges of affinity. [Appx3195 col 10, lines 43-65]

Patton's false statements were made, or repeated, after TEFLABS' MSJ reply brief was filed; and the District Court restricted the September 2015 hearing to damages issues.

23

The '209 patent specifically refutes Patton's declaration statements *c, d, e, and f* above, and shows statement *a* is highly misleading. The Court was heavily influenced by the "expert" declaration of what a person of ordinary skill would think (and by TEFLABs' lack of expert evidence on POSA). Dr. Patton, while an accomplished expert in his field and the <u>use</u> of indicators, had not read the '209 patent, and was not reasonably informed on the <u>design</u> of indicators.

**B.    <u>REPLY TO APPELLEE'S NO INEQUITABLE CONDUCT ARGUMENTS</u>**

**1.    TEFLABS has presented sufficient evidence related to anticipation and obviousness to avoid a finding of no inequitable conduct.**

TEFLABS established that **C33** was claimed in the Tsien '673 patent; properly rejected twice as anticipated by Tsien '673; and only allowed after Plaintiffs failed to properly disclose the Tsien 1980 BAPTA reference or any other aspect of affinity, and reasserted misleading Diwu affidavit results.

**2.    TEFLABS has presented sufficient evidence related to lack of written description to avoid a finding of no inequitable conduct.**

| ARGUMENT | EVIDENCE |
|---|---|
| **"… AATBioquest chose to construct a sham patent specification and claim set…. " [Appx276]** | |
| "In order to conceal the structure of Fluo-2, the specification presents long lists at new positions not claimed in the Tsien patent or varied in prior art Fluo-3 or Fluo-4." [MSJ Appx275] | **[Claim 21 reproduced at Appx289] -** showing long list of substituents at new positions V, R3, R4, U, j, m,n  |

| ARGUMENT | EVIDENCE |
|---|---|
| "...all of these new positions [V, R3, R4, U, j, m, n] were untested …" and serve to make the claims *appear* to be different than the Tsien patent claims" [MSJ Appx275]<br><br>"even with the falsification of compounds 284, 304, and 306; and the addition of compound 365, only 6 of the 34 examples [in the '683 application] were Fluo-2 compounds, and none of those 6 examples showed the k=H** of the compound of claim 1". [MSJ Appx288]<br><br>   **Note: The '165 Table 2 showed compound 284 as k=methyl, but example 14 (compound 284) showed k=H.<br><br>".... an elaborate attempt to hide" C33 [Appx283] | **Table 1 summary of '165 example compounds** - no change in right 7 columns [Appx287]  |
| "The large set of 32 examples in the provisional application served to conceal the preference for Fluo-2 compounds (only shown in 2 of 32 examples). [MSJ Appx288] | Example Compound 292 [Appx456]<br>Example Compound 298 [Appx457]  |

| ARGUMENT | EVIDENCE |
|---|---|
| "The '165 patent specification provides results for only 2 of the 34 example compounds (284 and 265)" There is no indication that the other compounds were actually synthesized. [Appx290] | ['165 Patent Appx38-96] |
| **Plaintiff withdrew C33 as the elected species** | |
| C33 "was the original single elected species" [MSJ Appx274] | [Appx2128, Appx1013 ] |
| C33 "was not disclosed in the '683 patent application" [MSJ Appx275] | **Table 1 summary of '165 example compounds [Appx287]** [Appx943] "did not appear to be included in Table 2" |
| "When the examiner could not locate support for the claim 1 compound in the specification, AATBioquest changed the elected species" to C34 [MSJ Appx275] | [Appx943] "…appropriate to elect a different species" …"elect compound 365" |
| **New claim 33** | |
| New claim 33 was presented in a different structural format from claims 21-26 [Appx2128]  The amendment was improper - did not identify resubmitted claim [Appx2129] | **[Reproduced Claims 33 and 21 at Appx2128]**  |
| "... cited a different compound (284G) in support of new claim 33." [Appx277] | [Appx877] "Claim 33 specifies a compound, support for which is found in claim 23 and throughout the specification, see e.g., compound 284G, example 14, page 83." |

| ARGUMENT | EVIDENCE |
|---|---|
| "That compound does not meet the written description requirement" because it is a different compound with a COOH substituent at position U. " [Appx277] |  **[Structures provided at Appx279]** |

| ARGUMENT | EVIDENCE |
|---|---|
| "…compound 284 (and two other compounds - 304 and 306) were falsified" to remove "fluorinated (i.e. Fluo-4) compounds that were described in the provisional patent application to non-fluorinated (i.e Fluo-2) compounds [Appx278]<br><br>All three falsified compounds were used as elected species:<br><br>... elected compound 304 in the base non-provisional application [Appx284 M[1]]<br><br>"… to provide support [for] claims for the Fluo-2 carboxy or 'cyclic lactone' compound that was the elected species in the base application" [Appx278]<br><br>… elected compound 306 in CIP application 13/374,967 [Appx284 M[3]]<br><br>"… AATBioquest claimed priority from an inflated specification where example compounds 304 and 306 were buried in a table of thirty other examples, and then changed those structures from fluorinated compounds to the preferred Fluo-2 compounds..." [Appx289-290] | Provisional Example Compound 284 [Appx455]<br><br>Non-Provisional Example Compound 284 [Appx681, Appx72 ]<br><br>Provisional Example Compound 304 [Appx457]<br><br>Non-Provisional Example Compound 304 [Appx683, Appx75 ]<br><br>Provisional Example Compound 306 [Appx458]<br><br>Non-Provisional Example Compound 284 [Appx684, Appx76 ]<br><br>Structures from "Table 2" of provisional and '683 applications |

| ARGUMENT | EVIDENCE |
|---|---|
| "... no compound 284G present in the Provisional Patent Application, where compound 284 was a Fluo-4 derivative..." [Appx278]<br><br>"As part of this falsification … expanded the synthesis example 14 of compound 284 to show its isomer 284G" [Appx281]<br><br>the expanded synthesis example illustrates that AATBioquest knew its obligation … to provide a provide written description (structural diagram) … "but the new compound did not support new claim 33" [Appx281] | <br>**[Example 14 provided Appx279]** |
| **apparent reliance on misprinted compound 284G** | |
| "... AATBioquest took advantage of a mistake in the published application to reintroduce the claim" that was eventually granted [MSJ Appx275]<br><br>"… In the published application, compound 284G is drawn incorrectly by omitting the U=COOH substituent and thus appearing" to be [the salt version of the] compound of claim 1" [Appx281]<br><br>"… the examiner apparently relied on the mistaken structure …" when new claim 33 was introduced on August 28, 2013.) [Appx282] | n |

| ARGUMENT | EVIDENCE |
|---|---|
| | **[Provided *Sep. 22, 2011* publication at Appx282]** |
| **C33 was never disclosed** | |
| "… three opportunities to describe" C33 - the provisional application, the base application at the same time as C34, and in the '683 application [Appx284] | [all prosecution histories attached, not disputed] |
| "The provisional patent application 60/923,452 filed April 13, 2007 did not show an example" for C33 or C34 [Appx283] | |
| The base patent application added C34 as compound 365, but did not add C33. [Appx284] | |

The table below summarizes TEFLABS arguments and evidence related to inequitable conduct by Plaintiff in avoiding a rejection for lack of written description. The bold entries cite specific evidence included in the MSJ or Reply.

TEFLABS alleged inequitable conduct in the falsification of compounds 284, 304, and 306 [Appx283]; the presentation of a sham specification [Appx290]; and reliance on 284G to support C33 [Appx283]

### 3.     Post-*Therasense* cases support reversal and remand of the District Court's no inequitable conduct ruling.

<u>American Calcar</u>

In *American Calcar, Inc. v. American Honda Motor Co.*, 768 F.3d 1185 (Fed. Cir. 2014), the Federal Circuit upheld the district court's finding that three Calcar patents were unenforceable due to inequitable conduct. The  district court had applied *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) and found that an inventor had deliberately withheld material information from the USPTO when he disclosed the existence of a prior art navigation system, but <u>intentionally did not disclose additional details about the prior art system</u> that would have led the PTO to deny the patent as anticipated or rendered obvious by the system.  The District Court found that the <u>withheld information would have led to an obviousness rejection</u> at the USPTO.  The District Court determined that there was a <u>single reasonable inference of intent </u>if any of the inventors possessed undisclosed information about the prior art system, knew it was material, and deliberately decided to withhold that information from the PTO.

In the present case, the failure to disclose the affinity relationship passes the "but-for" materiality test for both anticipation (Plaintiff could not have presented the "no guidance" argument), and for obviousness (a much stronger *prima facie* case of obviousness).  Here, we have the benefit of extensive prosecution history discussion of **C33** and the ultimate reasons for allowance.

In combination with other factors, the present case supports a finding that intent is the <u>most reasonable inference</u> for the following deceptive acts and omissions:

- Plaintiff began selling "Fluo-8" (and affinity versions of Fluo-8) in 2007 [Appellees Brief p10] and infringed the Tsien '673 patent until it expired in September 2008.  Dr. Diwu was aware that his former employer, Molecular Probes, licensed the Tsien '673 patent, and paid UC Berkeley a license fee. [Appx2922-2923]

- Plaintiff presented a sham specification with dummy variables as described above.

- Plaintiff included only two fluo-2 derivative compounds (compounds 292 and 298) in its provisional application [summarized as rows 19 and 20 in Table 1 Appx287]; and both had k=methyl, and had a methyl at position T:



- In the subsequent non-provisional patent applications, Plaintiff falsified

  compound 284, compound 304, and compound 306 to provide additional

  fluo-2 derivative examples[3], by removing fluorines at positions R2 and R5

Provisional Example Compound 284 [Appx455]



Non-Provisional Example Compound 284 [Appx681, Appx72 ]



- Despite being its best selling product, Plaintiff failed to include C33 as an

  example compound in its provisional, base, or '683 patent applications.

- Plaintiff alleged a different compound 284G for support of new claim 33:

  "Claim 33 specifies a compound, support for which is found in claim 23 and

  throughout the specification, see e.g., compound 284G, example 14, page

  83."   [Appx877]

---

[3] Plaintiff's principal argument in prosecution was its use of H at the R2 and R5 positions. [Appellee's Brief pp13-14]

Apotex

In *Apotex*, the Federal Circuit upheld the district court's finding that Apotex's

patent is unenforceable due to inequitable conduct. The Examiner's Reasons for

Allowance indicated that the patent was allowed on the basis of an alleged

distinction made in the inventor's expert declaration.

The Federal Circuit agreed that "clear and convincing evidence establishes

Dr. Sherman's intent to deceive the PTO."

> "As of the filing … Dr. Sherman was aware that some of the
> assertions he made in the specification regarding the prior art were at
> least misleadingly incomplete, if not plainly inaccurate. Additionally,
> Dr. Sherman admitted that he never performed the experiments
> described in the '556 patent, and yet he drafted the examples in the
> specification entirely in past-tense language… Dr. Sherman was also
> aware that ***additional misrepresentations were made on his behalf to
> the PTO***, and directed his counsel to bolster those misrepresentations
> by ***procuring and submitting the declaration of an expert who was
> deliberately shielded from the truth***. [*Apotex Inc. v. UCB, INC.*, 763
> F.3d 1354, 1362 (Fed. Cir. 2014)]

The Federal Circuit explained that "Dr. Sherman's statements were not mere

advocacy for a preferred interpretation; his statements were factual in nature and

contrary to the true information he had in his possession."

In the present case, Dr. Diwu submitted two affidavits that alleged unexpected

results, but withheld from those affidavits any discussion of affinity; or any

indication that AATBioquest sold the two compounds C34 and C33 as sister affinity

versions Fluo-8H and Fluo-8 [Appx385].  At trial, Plaintiff appears to have followed

the *Apotex* tactic of submitting the declaration of an expert who was uninformed.

As discussed above, those expert declarations continue to be a substantial part of

Appellee's case in this appeal.

Ohio Willow Wood ("OWW")

In *Ohio Willow Wood* the Federal Circuit found that OWW had both

withheld material information and made material representations during two

reexamination proceedings before the USPTO, reversed a finding of no inequitable

conduct, and remanded to assess the credibility witnesses on the issue of intent to

deceive.  The Federal Circuit found that misrepresentations to the BPAI were

tantamount to the filing of an unmistakably false affidavit, and that the

"materiality" prong of inequitable conduct was satisfied.

The Federal Circuit found that the knowing "misrepresentations and

misleading statements that were directly refuted by credible evidence that OWW did

not otherwise disclose" created "a genuine issue of material fact of intent. The court

explained:

> "Nor do OWW's subjective assertions of good faith unsupported by
> affidavits or declarations from the attorneys outweigh the evidence of
> deceptive intent on summary judgment. ***If OWW had simply withheld
> a single piece of information or made a single misrepresentation,
> this would be a different case. However, OWW withheld various
> pieces of material information and had no reasonable explanation
> for the several misrepresentations it made to the PTO.*** In total, the
> collective weight of this evidence supports our conclusion that the
> evidence would support a finding of intent that is the single most
> reasonable inference to be drawn from the evidence at this stage of the
> proceedings." [*Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d
> 1333, 1351 (Fed. Cir. 2013)]

36

A distinguishing factor of the present case is that Plaintiff's misrepresentations and omissions permitted it to overcome or avoid <u>three separate grounds of rejection</u> at the PTO - written description; anticipation; and obviousness.

In the present case, Plaintiff overcame two anticipation rejections of **C33** by withholding critical information about affinity; withholding the common industry practice of offering multiple affinity versions of an indicator by substituting at position k, including k=H; deceptively naming its example compounds to conceal their close affinity relationship; and presenting a false "no guidance argument that could not have been made if affinity were disclosed.

Plaintiff avoided an obviousness rejection with false and misleading affidavits that claimed "unexpected" brightness advantages without disclosing that roughly half of the benefit was due to Fluo-2's known excitation maxima lying closer to the 488nm laser; without disclosing that non-halogenated, lower molecular weight compounds, were known to have better loading; and without disclosing the affinity relationship of **C33** and **C34**.

After admitting **C33** was not an example compound, Plaintiffs avoided a second lack of written description rejection by submitting new claim 33 and citing compound 284G, that was different from **C33** in its salt version and position

T=COOH, and which appears to have been designated when a printing error made it look like **C33**.

All of these misrepresentations and omissions are shown by the prosecution history to meet the "but-for" materiality threshold of *Therasense*. As OWW notes, multiple instances of misrepresentation and omission form a very high collective weight of evidence of intent.

In this case, Plaintiff's avoidance of the three types of rejection, coupled with its intentional failure to disclose **C33**, its infringement of the Tsien '673 Patent, and its ongoing reliance on false expert declarations support a finding that intent to deceive is the only reasonable inference.

### 4. Specific responses to Appellee's arguments.

*"... the use of a 488nm laser would not explain the approximately 200% increase in brightness of Fluo-8" [Appellee's Brief at 45]*

Approximately half of the brightness advantage of "Fluo-8" over Fluo-3 was due to its peak absorbance being closer to the 488 nm argon laser [Appx295, Appx361]

*"... Kao was published five years after the priority date" "overall hydrophobicity is unpredictable" [Appellee's Brief at 45-46]*

Kao(2012) was published before Dr. Diwu's August 2013 affidavit. The improved cell loading of H versus halogen substituents was known. [Appx390]

*"... statements made during prosecution were factually accurate ... could not have been made with deceptive intent"* [Appellee's Brief at 45-46]

The post-*Therasense* cases support a finding of inequitable conduct when critical information is withheld.

*"... TEFLABS has not established that there was a common practice [of using k to modify affinity], or that Hydrogen (H) at the k position was ever considered desirable"* [Appellee's Brief at 47]

Simpson(2006) shows the routine use of position k, as well as Oregon Green and calcium Green use of k=H. Fluo-2 needed a moderate decrease in affinity to match Fluo-3 and Fluo-4.

*"... applicants provided ...a detailed structural comparison of the claimed Fluo-8 Am and Fluo-2 AM ..."* [Appellee's Brief at 48]

The structures simply linked alleged compound names to claims 33 and 34, and gave no suggestion about either affinity or the close relationship between the compounds.

*"... Applicants never relied on the published application [for 284G] ..."* [Appellee's Brief at 49]

There is no explanation for why 284G was designated, but not its isomer 284. Regardless, neither compound was close to **C33**- they were salt versions with T=COOH. [Appx279]

39

C.  **REPLY TO APPELLEE'S WILLFUL INFRINGEMENT ARGUMENTS**

1.  **TEFLABS' Defenses were not Objectively Unreasonable**

As summarized above, the District Court record is sufficient to show that

TEFLABS' anticipation; obviousness, written description, and inequitable conduct

defenses were not objectively unreasonable[4].

2.  **In this case, the prosecution history is specific enough relative to the single compound in question to obviate a "Person of Ordinary Skill in the Art ("POSA") analysis for obviousness or written description**.

TEFLABS reasonably believed, that under the unique circumstance of this

case, that a POSA analysis was not required in order to establish anticipation,

obviousness, and written description defenses:

• This case is unique in its identification and extensive consideration of the

single compound in dispute.

• There is no question about the specific identity of that compound.

• There is no question about the closeness of the prior art fluo-2 example.

• Plaintiff admitted **C33** was not in the 34 examples of Table 2. [Appx943]

---

[4] As filed, the prosecution history files were presented as accessed from the USPTO- in reverse chronological order with indexing by date and description. The indexing appears to have been lost when processed to the District Court docket. TEFLABS' Reply to Plaintiff's MSJ referred to the '683 prosecution by dates.

- Plaintiff's withdrew the compound as the elected species, and canceled claim 26 for that single compound. [Appx943]

- There is no question that compound 284G (a salt version compound with T=COOH) is not the compound C33.

### 3. The USPTO reexamination should be admissible to further support the "objectively reasonable" aspect of TEFLABS' anticipation, obviousness, and inequitable conduct defenses.

The USPTO is an objective entity with skill in evaluating patent claims and prior art. Consideration of the reexamination record does not substantively prejudice Plaintiff. The PTO found substantial new questions of patentability for both anticipation and obviousness based on the references submitted in TELABS' MSJ.

### 4. TEFLABS' limited and inadvertent Post-Injunction Sales were not the basis for punitive treble damages.

In July 2015, TEFLABS discovered <u>and reported</u> that it had made 12 sales in May 2015 for a total of about $2000. [Appx3017]

The District Court noted the post-injunction sales, but specifically refused to award attorney fees based on post-injunction sales.

D.    **REPLY TO APPELLEE'S LOST PROFIT ARGUMENTS**

1.    **There is no evidence in the record to support Appellee's assertion that any portion of Fluo-8 sales were for uses that could not have been performed by non-infringing Fluo-3, Fluo-4, or Fluo-2 AM.**

Dr. Diwu testified that the market for Fluo-8 was to replace Fluo-3 and Fluo-4 sales and to support new uses. [Appx2917]

Plaintiff failed to introduce any evidence that either TEFLABS or AAT BioQuest advertised new uses for the Fluo-8 compound.

Plaintiff failed to introduce evidence that any sale by TEFLABS was for a use that could not be provided by Fluo-3, Fluo-4, or Fluo-2.

There was no market allocation study to determine what portion, <u>if any</u>, of Fluo-8 sales were for uses that could not have been performed by non-infringing Fluo-3, Fluo-4, or Fluo-2 AM (or any other commercial BAPTA/fluorescein calcium indicators).

Plaintiff offered Fluo-8 at a retail price of roughly half of market leading Fluo-4 [Appx2911-2912].  TEFLABS sold Fluo-2 MA AM ("fluo-8 AM") for as little as 20% of Plaintiffs pricing. [Appx2909, line 22-23]  There was no market allocation study to determine what portion of Fluo-8 sales were to provide lower cost indicators for uses that could be provided by Fluo-3 or Fluo-4.

There is no suggestion in either of Dr. Diwu's affidavit; or in Plaintiffs PTO brief that Fluo-8 had a use that could not be performed by Fluo-2.  The data in the

affidavits and brief showed similar results for "Fluo-2 AM" as "Fluo-8 AM".

[Appx894]

It was error for the District Court to find that there were no non-infringing

substitutes for Fluo-8 AM; and it was error to award lost profits in this case.

## E.    **TEFLABS' RESPONSE TO MOTION TO STRIKE**

The Decision on Reexamination Request is relevant to the issue of whether

TEFLABS defense was objectively unreasonable.

The '409 and '432 patents are relevant to the issue of whether the District

Court erred in denying TEFLABS' Motion for Reconsideration.

Simpson(2006) was in evidence as part of the MSJ and should be considered

by this Court in determining whether the District Court erred in finding no

infringing alternatives.

The listed citations Appx301, Appx295, and Appx296 excerpt declaration

and key literature passages that were presented to the District Court. Citations

Appx264-315 and Appx2126-2153 are the Summary Judgement Motion/Brief and

Reply that were filed in District Court that refute Appellee's position that

TEFLABS did not present sufficient argument and evidence. TEFLABS

respectfully argues that the above documents should not be stricken.

## CONCLUSIONS AND RELIEF SOUGHT

1.      For the reasons set forth above and in the Opening Brief, this Court should reverse the judgment of the District Court.

2.      Appellant requests that the '165 patent claim 1 be held invalid under 35 U.S.C. § 102 as anticipated by US Patent 5,049,673.

3.      Appellant further requests that the '165 patent be held unenforceable for inequitable conduct by appellee, and that the matter be remanded to the trial court for determination of potential damages due to Appellant.

4.      In the alternative, Appellant requests that this Court reverse the District Court's finding of willfulness and its award of lost profits, and remand the case for determination of a reasonable royalty.

Dated: September 6, 2016                    Respectfully Submitted,


                                           /s/ Rick B. Yeager
                                           Rick B. Yeager, Attorney
                                           10805 Mellow Lane
                                           Austin, Texas 78759
                                           512-779-9525 phone
                                           email: ryeager@austin.rr.com

                                           *Counsel for Defendant-Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on September 6, 2016, I electronically filed the foregoing Corrected Brief with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770
shelly@gibsonmoore.net

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

>       this brief contains <u>6,554</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

>       this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated September 6, 2016                     <u>/s/ Rick B. Yeager</u>
                                           Rick B. Yeager